## C. N. NELSON LUMBER CO. v. TOWN OF LORAINE.

*(Circuit Court, W. D. Wisconsin. 1884.)*

1. TAXATION—INTERSTATE COMMERCE—LOGS IN TRANSIT.
   Logs cut on lands owned by a Minnesota corporation in Wisconsin and hauled down to a river, and piled on the ice to await the opening of the river, to be floated down into Minnesota, to be there manufactured into lumber, cannot be considered as in transit from one state to another in a commercial sense, and may be assessed and taxed in Wisconsin.

2. SAME—CONSTITUTIONALITY OF WISCONSIN STATUTE OF 1882.
   Sections 1 and 2 of the Wisconsin statute of 1882, regulating the assessment and taxation of logs belonging to non-residents, is not unconstitutional as violating the principle of uniformity in providing for an assessment in April, while logs belonging to residents are assessed in May, nor as unjustly discriminating against non-residents.

3. SAME—DOUBLE TAXATION.
   The fact that lands on which logs are grown are assessed for taxation in May, and the logs cut therefrom are assessed for taxation in the following April, does not render the tax on the logs a second tax.

4. SAME—TAXATION IN ANOTHER STATE—REMOVAL OF PROPERTY.
   Where a tax is lawfully levied on property in one state, the constitutionality of such tax is not affected by the fact that such property is again subjected to taxation in another state to which the owner has removed.

At Law.

*J. N. & I. W. Castle, Fayette Marsh,* and *Clapp & McCartney,* for plaintiff.

*George D. McDill,* for defendant, with *J. N. Searles,* of counsel.

BUNN, J. This is a general demurrer to the first and third counts of the plaintiff's complaint, in an action at law to recover back taxes paid to the treasurer of the defendant town. The facts in the case are briefly these: The plaintiff is a corporation created under the laws of Minnesota, and doing business at Stillwater, in that state. It is, and for many years has been, the owner of large tracts of pine-timbered lands in northern Wisconsin, and is engaged in the lumbering business, which consists in cutting pine logs from the timber of said lands during the winter season in each year, and hauling the same upon sleds to the different streams tributary to the Saint Croix river, in Wisconsin, and placing them upon the banks of said streams and upon the ice thereof, between the banks, and there awaiting high water in the spring to transport them down said streams into the

Saint Croix river, and thence through the Saint Croix lake to the city of Stillwater, where they cut them into lumber, and market the lumber in Minnesota and other states west of the Saint Croix and Mississippi rivers. This business, as appears from the complaint, is carried on upon a large scale; the logs so put in by the plaintiff in one winter, that of 1881–82, amounting to 10,000,000 feet. It appears clearly from the complaint that the logs taxed by defendant town during each winter were cut in the town of Loraine, in Polk county, and were put upon the ice of the Clam river, between the banks in said town, for the purpose and with the intention of running them down said stream into the Saint Croix river, and thence to Stillwater, as soon as the ice and snow should thaw out in the spring, and there should be a sufficient rise of water in said Clam river to float them.

In the springs of 1882 and 1883, on or about April 1st, while the plaintiff's logs were so lying piled upon the ice of said stream in said town, the assessor of said town put them in his list and entered them for valuation and assessment for the general state, county, and town taxes for those years, and afterwards, the said tax being duly extended against said logs and default of payment made, a warrant was issued and the plaintiff's personal property seized for their non-payment, whereupon the plaintiff made protest, and, to save its property, paid said taxes, amounting in all to the sum of $1,587.65, which this suit is brought to recover back, on the ground that the logs were not legally and properly taxable in Wisconsin.

The first and, in my judgment, the graver contention on the part of the plaintiff is that at the time of their assessment the logs were in commercial transit from one state to another, and were therefore exempt upon conceded principles of law, and also that they had so become the subject of commerce as to render taxation by the state authorities an unwarrantable interference, in violation of the provision of the United States constitution which gives to congress the power to regulate commerce between the several states. This is certainly a very important question, and I have endeavored to give to it the consideration which it deserves, and in doing so have examined all the authorities I have been able to find on this subject. If the logs were in commercial transit, or their taxation was an interference with congressional authority, they were not taxable. The plaintiff contends that they became and were in transit from the time they were loaded upon sleds in the woods and started on their destination towards the river, to be rolled down the banks thereof upon the ice. But I am unable to concur in this view, and am of opinion that the logs were in no actual or legal sense *in transitu* while awaiting shipment down the river, nor had they become the subject of commerce so as to make the usual and ordinary taxation by the state authorities an interference with the proper regulation of commerce by congress.

It was a part of the business of the plaintiff to grow the timber

upon its lands from which the logs were made. They were carrying on an extensive business in Wisconsin, which required the employment of many hands and teams, and the carrying on of large operations during five or six months of each year. These logs were grown in the township and taxing district where they were cut and piled up at the time the tax was extended against them. They had never been sold, but at the time of the assessment still belonged to the same corporation which owned the land and timber from which they were cut. Though put upon the ice of the river with the intention of floating them down at some future indefinite time, they were still there, and in the same town and county where they grew and were cut, and how long they would remain there, or when they would or could be started on their further destination out of the state, was wholly uncertain. The plaintiff might change its intentions in regard to shipping them. Unless it did so they would doubtless be put in motion whenever the floods came, whether the following spring or summer or fall; or, if the water should not be sufficient to float them out during that season, then the next following or some subsequent season, according to the usual course of such business. As generally happens, some would be floated out the first season, and some would remain over and go out during subsequent seasons. I cannot think that the act of hauling the logs and piling them upon the ice or upon the banks of the stream, within the town and taxing district where they grew and were cut, with the intention of floating them out of the state whenever high water should come, for the purpose of manufacture, constitutes putting them *in transitu*. And I think the power which congress has under the constitution to regulate commerce, was never intended to interfere in any degree or manner with the power of the local authorities to tax personal property in the district where the owner resides, or where the property has a legal *situs*.

It is not denied by plaintiff's counsel that the property had a legal *situs* in the town of Loraine from the time the logs were cut to the time they were hauled to the river; but it is claimed they lost their *situs* and were in transit from the time they were started on sleds, or other means of conveyance, to the stream where they were banked. I think the legal *situs* continued during the time they remained so banked upon the river. If so, the tax was a proper one upon the property itself where situated, and was not a tax upon commerce or upon the transportation of property, and had no relation to the matter of regulating commerce between the states, which belongs to congress. Suppose the plaintiff, instead of using these lands to grow pine timber, had used them for a farm, upon which they grew large quantities of stock for market, and in the winter should drive droves of cattle from the farm to this same Clam river, and there feed and keep them until high water in spring or summer, when they could ship them down the river out of the state to market. They still belong to the original owners, have never become the subject of commerce by

being sold or bartered; but while being so held, and before shipment, the time for the annual levy of taxes comes around, and the assessor of the town extends the tax against them.

The case, in my judgment, would be very like the one at bar. But I cannot think the cattle would have lost their legal *situs* in the town where they were raised and kept, or that they would be in transit from this state to another, in any sense that would forbid their being taxed. The mere intention in such a case, where there has been no sale or transfer of shipping out of the state at some indefinite time, depending upon some circumstance so uncertain as the weather and the floods, would not amount to putting the property in actual or legal transit so as to bring them within the principle recognized in the adjudged cases. See *State* v. *Carrigan*, 39 N. J. Law, 35; *Blount* v. *Monroe*, 60 Ga. 61; *People* v. *Niles*, 35 Cal. 282; *Carrier* v. *Gordon*, 21 Ohio St. 605; *State* v. *Engle*, 34 N. J. Law, 425; *Ogilvie* v. *Crawford Co.* 7 Fed. Rep. 745; *Passenger Cases*, 7 How. 416; *State Freight Tax Case*, 15 Wall. 232; *State Tax on Railway Gross Receipts*, Id. 284; *Conley* v. *Chedic*, 7 Nev. 336; *Hurley* v. *Texas*, 20 Wis. 665; *Erie Ry.* v. *State*, 31 N. J. Law, 531; *Brown* v. *Maryland*, 12 Wheat. 442; *Crandall* v. *Nevada*, 6 Wall. 35; *Almy* v. *State*, 21 How. 169.

2. The next contention of the plaintiff is that the statute of Wisconsin under which the tax was levied is unconstitutional, because it violates the principle of uniformity which the constitution of the state provides for; and also that it violates the fourteenth amendment to the constitution of the United States, because it discriminates unjustly against non-residents. The general provision of the Revised Statutes of the state in regard to the time of assessing property is that personal property shall be assessed as of the first day of May in each year, and real estate during the months of May and June. Section 1040 provides that "all personal property shall be assessed in the assessment district where the owner resides, except as hereinafter provided. If such owners be non-residents of the state, but have an agent residing in this state in charge of such property, then the same shall be assessed in the district where such agent resides; otherwise, in the district where the same is located, except as hereinafter provided. Merchants' goods, wares, commodities kept for sale, tools and machinery, manufacturers' stock, farm implements, cord-wood, live-stock, and farm products, excepting grain in warehouse, shall be assessed in the district where located. Saw-logs and timber which are to be sawed and manufactured in any mill within this state, which is owned or leased by the owner of such logs and timber, shall be assessed as manufacturers' stock, in the district where such mill may be located. Saw-logs, timber, railroad ties, lumber, and other articles not being manufacturers' stock, shall be assessed where the owner or his agent, in the case aforesaid, resides." This has been, substantially, the law of the state for many years.

In March, 1882, the legislature passed the following act, which is the one under which, it is alleged, this assessment was made, and which is claimed to be unconstitutional:

"Section 1. All saw-logs, timber, railroad ties, or telegraph poles cut in this state, owned by any person or corporation not residing in this state and having no agent in this state, shall be assessed in the assessment district where the same shall be banked or piled for shipment either by water or railroad.

"Sec. 2. It shall be the duty of the assessor of the assessment district in which saw-logs, timber, railroad ties, or telegraph poles, owned by non-residents as aforesaid, may be located, to ascertain, at any time during the month of April in each year, the amount of such property in his assessment district, by actual view, as far as practicable, to fix the value of said property and assess the same to the said owners as other personal property is valued and assessed."

It is claimed (1) that this law violates the principle of uniformity in providing for an assessment of the logs of a non-resident at a different time than that provided in the case of residents; (2) that for the same reason it discriminates unjustly against the non-resident. But I am of opinion that the case does not come within either of these principles. The constitution provides that the rule of taxation shall be uniform. This would be the law if there were no constitutional provisions on the subject. It is of the very nature of a tax that it should be assessed according to some uniform rule, otherwise it would be confiscation and not taxation. But this does not mean that the *time and method of assessment shall be identical,* but only that after the legislature has declared what classes of property shall be subject to taxation, the tax itself shall be levied upon such property, or the owners thereof, according to a uniform rate of valuation. It is not claimed that this has not been done in the present case. Indeed, so far from setting up one standard of valuation for one class of persons, and another for another class possessing the same kind of property, the purpose of the law would seem to be to bring about that substantial equality in taxation which the common law as well as the constitution requires. The legislature was aware that the logs of non-residents as well as resident owners were liable to be floated out of the state in the month of April, or, if not run out of the state, might become mixed with the logs of other persons in the different streams in such a manner as to render it quite impracticable to take any separate account of them in the month of May, when the logs of resident owners are assessed. Very often they would be beyond the jurisdiction of the taxing officer of the town, (as the plaintiff alleges they were in this case,) and as the owner could not be reached and had no local agent in the state, escape taxation entirely. The law, by providing that the situation, amount, and value of the logs be taken in April at the place where piled or banked, seeks to put non-resident and resident owners upon the same footing. But it is claimed that the law which waits until May before it takes account of the res-

ident owner's logs, gives him an opportunity to take his logs out of the state before the tax is levied, and so suffers him to escape taxation, while the non-resident owner is taxed before he can get his away. But this argument proceeds upon a misapprehension of the statute, which makes ample provision for taxing the logs of the resident owner, wherever they may be, or, if sold, then the proceeds. Except in the case when logs are situated at some mill for manufacture within the state, they are assessed to the resident owner, as other personal property, at the place of his residence. And he may be put under oath, if necessary, and required to testify as to his property, whether owned here or elsewhere. This could not be done with non-residents. And hence the justice and propriety of assessing the logs in April, before they are mixed in the streams with other logs or carried beyond the jurisdiction of the town. In this way a diversity in the matter of time and method brings about equality in the taxation, which is the very essence of the constitutional provision.

There is one other objection which, perhaps, should be noticed, which is that as the law provides for the taxation of the plaintiff's lands in May or June of each year, the laying a tax upon the logs in the following April is a second tax upon the same property within the same year or tax period. This objection is specious, and has no solid foundation. The statute provides for the assessment of personal property as of the first day of May in each year, except as to saw-logs, telegraph poles, and railroad ties belonging to non-residents, without any agent in the state, which may be assessed in April. Real property is assessed any time between the first day of May and the time of the sitting of the board of review, which meets on the last Monday in June; so that one time is fixed for the assessment of personal property, and another for that of real estate. But when either is once assessed it is exempt for the usual taxing period of one year. The circumstance that personal property is manufactured from what was once part of the realty, and so rendered liable to assessment twice within 12 months, results in no inequality, injustice, or double assessment, and without it, it is evident that large quantities of this class of property, mined or manufactured from real estate, would escape taxation altogether. The land is assessed, generally speaking, in the month of June. In the winter succeeding, the timber is cut off and made into logs, lumber, or shingles, and in that form is assessed in April or May of the next year. The value of these articles consists, partly, in the stumpage, but in still greater part, perhaps, in the labor bestowed upon it. In the June following, when the land is again assessed, no account can be taken of the timber that has been cut during the year by way of valuing it as a part of the land. So that for the two years the owner is assessed upon his real estate and personal property for their correct value; and this would be so for any number of years together. And precisely the same principle applies to resident as to non-resident owners.

There is certainly no injustice in the principle of taxing saw-logs belonging to non-residents, provided there is no unjust discrimination made between them and resident owners. They have the same privilege as residents, of which they avail themselves largely, of buying and holding pine lands in the state. During several months of the year they carry on large operations in logging and lumbering. While so engaged they are entitled to the same measure of protection in their person, property, and business as residents. They have all the benefits of a uniform, just, and stable government. In consideration for the security to person and property which the law thus yields them, they are required to pay taxes upon their property in the same manner as residents of this state. It is true, as a general rule, that personal property is supposed to follow the person of the owner, and be properly taxable where he resides. But many of the states have adopted the principle of assessing cumbrous articles like saw-logs and manufacturers' stock at the place where kept, and where it has a legal *situs*. It is evident that these two rules for taxation may sometimes, in case of non-residents, result in taxation of the same property in two states in the same year; and in this case it is alleged as a reason for recovering back the tax paid, that the plaintiff was liable to assessment upon these logs, and was so assessed in Minnesota. But it is evident that the validity of the law in this state can in no way depend upon what the law and practice of taxation may be in another state. The logs being grown and having an actual *situs* in this state, and being subject to the jurisdiction of the taxing officers when the tax was levied, such jurisdiction cannot be divested by any subsequent event brought about by the act of the party himself in taking the logs out of the state subsequent to the levy. Either it is lawful to tax the logs in Wisconsin or it is not. If lawful at all, the mere circumstance that the owner, after the tax is levied, voluntarily takes them into another state, where they are also taxed, can have nothing to do with the question of the constitutionality of the tax here. Such consideration would be more properly addressed to the wisdom and discretion of the legislature of Minnesota.

Demurrer sustained.

See *Schulenberg-Boeckeler Lumber Co.* v. *Town of Hayward*, 20 FED. REP. 422.—[ED.