**TEXAS CONSOLIDATED TRANSP. CO.
et al. v. STATE.**

No. 9705.

Court of Civil Appeals of Texas. Austin.

April 7, 1948.

Rehearing Denied April 28, 1948.

892

C. H. Gilmer, of Rocksprings, Marshall O. Bell, Morriss, Morriss & Boatwright and Will A. Morriss, Jr., all of San Antonio, for appellants.

Price Daniel, Atty. Gen. of Texas, and W. V. Geppert and C. K. Richards, Asst. Attys. Gen., for appellee.

HUGHES, Justice.

This suit was brought by the State of Texas against Texas Consolidated Transportation Company, a dissolved corporation, and its statutory trustees, appellants, for recovery of gross receipts taxes alleged to be owing under art. 7066b, Vernon's Ann. Civ. Stats.

Trial was before the court and the State recovered judgment for $16,120.51.

The material facts are without dispute and show:

Appellant company (hereafter called Company) was incorporated February 27, 1942, for the purpose of transporting goods, wares and merchandise or any valuable thing, under Sec. 69, art. 1302, V.A. C.S.

The Company was to engage in transporting petroleum products over the highways of Texas in intrastate business and, on March 10, 1942, it obtained a temporary contract carrier's permit from the Railroad Commission of Texas. This permit was made permanent by the Commission on May 1, 1942.

On February 4, 1944, the Railroad Commission cancelled the Company's contract carrier's permit and granted it a temporary common carrier's certificate of convenience and necessity "to operate a common carrier motor carrier service limited to the transportation of petroleum products in bulk in tank trucks to, from and between all points in Texas." This temporary certificate was made permanent by the Commission on April 19, 1944.

After February 4, 1944, the Company did not operate as a contract carrier but did operate as a limited common carrier from such date until October 16, 1944, when the company corporation was dissolved. Sale of the certificate of convenience and necessity by the company corporation to a partnership doing business under the same name as the corporation was approved by the Railroad Commission on December 16, 1944.

Occupation tax liability of the Company for the last nine months of 1944 was sustained by the trial court under Sec. (a), art. 7066b, V.A.C.S., which reads: "(a) Each individual, partnership, company, association, or corporation doing business as a 'motor bus company' as defined in Chapter 270, Acts Regular Session of the Fortieth Legislature, as amended by the Acts of 1929, First Called Session of the Forty-first Legislature, Chapter 78, or as 'motor carrier' or 'contract carrier' as defined in Chapter 277, Acts Regular Session of the Forty-second Legislature, over and by use of the public highways of this State, shall make quarterly on the first day of January, . April, July, and October of each year, a report to the Comptroller, under oath, of the individual, partnership, company, association, or corporation by its president,

treasurer, or secretary, showing the gross amount received from intrastate business done within this State in the payment of charges for transporting persons for compensation and any freight or commodity for hire, or from other sources of revenue received from intrastate business within this State during the quarter next preceding. Said individual, partnership, company, association, or corporation at the time of making said report, shall pay to the State Treasurer an occupation tax for the quarter beginning on said date equal to two and two tenths (2.2) per cent of said gross receipts, as shown by said report. Provided, however, carriers of persons or property who are required to pay an intangible assets tax under the laws of this State, are hereby exempted from the provisions of this Article of this Act."

The last sentence of this statute is invoked by the Company as exempting it from the tax therein levied. This contention compels a decision as to whether or not, under the facts of this case, the Company was "required to pay an intangible assets tax under the laws of this State," and a construction of the words just quoted. The Company admits liability for a tax upon its intangibles for the year 1944, but unless this is a legal liability the exemption claimed cannot prevail.

Art. 7105, V.A.C.S., providing for the payment and apportionment of an intangible assets tax reads: "Each incorporated railroad company, ferry company, bridge company, turnpike, or toll company, oil pipe line company, and all common carrier pipe line companies of every character whatsoever, engaged in the transportation of oil, and in addition each 'motor bus company,' as defined in Chap. 270, Acts, Regular Session of the Fourtieth Leg., as amended by the Acts of 1929, First Called Session of the Forty-first Legislature, Chap. 78, and each 'common carrier motor carrier' operating under certificates of convenience and necessity issued by the Railroad Commission of Texas, doing business wholly or in part within this State, whether incorporated under the laws of this State, or of any other State, territory, or foreign country, and every other individual, company, corporation, or association,

doing business of the same character in this State, in addition to the ad valorem taxes on tangible properties which are or may be imposed upon them respectively, by law, shall pay an annual tax to the State, beginning with the first day of January of each year, on their intangible assets and property, and local taxes thereon to the counties in which its business is carried on; which additional tax shall be assessed and levied upon such intangible assets and property in the manner provided in Chap. 4, Title 122 of the Revised Civil Statutes of Texas, 1925. The county or counties in which such taxes are to be paid, and the manner of apportionment of the same, shall be determined in accordance with the provisions of Chap. 4, Title 122 of the Revised Civil Statutes of Texas, 1925. The intangible taxable values of said motor bus companies and said common carrier motor carriers shall be apportioned to the counties in or through which they operate in proportion to the distance in miles of the highways traversed by said carriers in each respective county. Provided, however, that Electric Interurban Railway Corporations are exempt from the provisions of this Article."

Those paying an intangible assets tax under art. 7105, supra, are relieved from the payment of occupation taxes based upon gross receipts by compliance with art. 7116, V.A.C.S., which reads: "Whenever any individual, company, corporation or association, embraced within the eighth article of this chapter, shall pay in full, and within the year for which same may be assessed, all its State and county taxes for that year upon all its intangible properties as determined, fixed and assessed under the provisions of this chapter, such individual, company, corporation or association shall thereby be relieved from liability for and from payment of any and all occupation taxes measured by gross receipts for or accruing during that year under any law of this State; but no such individual, company, corporation or association shall be entitled to any such exemption, except for the year for which it shall, before same shall become delinquent, pay all its aforesaid intangible State and county taxes for that year."

In order to show compliance with this statute the Company proved that the State Tax Board had assessed the tax for 1944 upon the Company's intangible assets, and had opportioned the entire amount to Kerr County; that the Company, on January 31, 1945, through one of its officers offered to pay the intangible assets tax to Kerr County in person but was assured by the tax collector of Kerr County that payment by check sent by mail would be satisfactory. This check, in the proper amount, was mailed and received by the tax collector of Kerr County on January 31, 1945, who returned the check pursuant to instructions from the State Comptroller that the levy and assessment of intangible taxes against the Company for the year 1944 was void.

It also appears that on January 31, 1945, the Company paid the ad valorem taxes on its tangible properties to the county, state and independent school district.

For the purpose of this opinion we assume (1) that the certificate of convenience and necessity issued the Company on February 4, 1944, was of such a character as to constitute it a common carrier motor carrier within the meaning of art. 7105, supra, and (2) that the Company's tender of payment of taxes on its intangible assets was sufficient.

The position of the State is that liability for the payment of taxes on intangible assets is to be determined as of January 1st, preceding the assessment of such tax, and it appearing that the Company was not engaged in a business on January 1, 1944, which subjected it to the payment of such tax, the change in its business during the year 1944 to one that fell within the purview of the intangible assets tax law did not create any liability for the payment of such tax for the year 1944.

Art. 7105, supra, provides that those enumerated "shall pay an annual tax to the State, beginning with the first day of January of each year, on their intangible assets and property * * *."

Art. 7106, V.A.C.S., provides that those embraced within the preceding art. 7105, "Between the second day of January and the first day of March of each year * * *," shall file a statement containing certain information.

Art. 7107, V.A.C.S., provides, as to the statement required by art. 7106, that "Each such statement shall show the following items and particulars as the same stood on the first day of January next preceding * * *." Then follow thirteen different matters about which information is to be given, including (a) the par face value of each share of stock authorized or issued and the amount of capital actually employed in the State; (b) the market value, or if no market value, the true value of such stock; (c) the assessed value and the true value of all tangible properties located within and without this State; (d) a complete statement as to outstanding liens and mortgages, including the true and fair market value of each debt; (e) a full statement as to gross income and earnings for the next preceding twelve months.

This statement shall be placed before the State Tax Board on the first Monday after the first of March of each year, or as soon thereafter as practicable (art. 7109, V.A.C.S.), and is used by the Board, together with such other information it may have or obtain in determining and apportioning among the various counties the true value of the intangible properties of the taxpayer within this State. Final valuation and apportionment shall be made by the Board not later than June 20th of each year. art. 7113, V.A.C.S.

This analysis of the provisions of the intangible assets statutes is given as a basis for our conclusion that January first of each year is the date as of which the status and values of intangible assets is to be determined.

A tax upon intangible assets is an ad valorem tax. Of necessity there must be some specific date upon which the status and values of property to be taxed shall be fixed and determined. In Humble Oil & Refining Co. v. State, Tex.Civ.App., 3 S.W.2d 559, 562 Waco CCA. Writ Refused, a case involving ad valorem taxes upon tangible property, the court quoted with approval from Am. & Eng. Ency. of Law (2d Ed.), p. 662, a statement of the underlying and applicable principles, as follows: "The taxable status of persons and property generally relates to a day

certain in each year. When the law thus provides, no taxes can be legally assessed and levied for a particular year unless the conditions requisite to liability exist on the day fixed, and no changes in ownership, fluctuations in value, nonresidence, removal or destruction of the property, or the like, occurring subsequent thereto, can be considered in making or reviewing an assessment. The very notion of an assessment involves the fixing of values as of a certain date, since there is no mode of making the valuation vary with the increased or diminished value during the current year, and, if there were, such varying valuations would be destructive of established principles of uniformity."

Without repeating the various provisions of these statutes, briefed above, it is clear that a reasonable, fair and practical interpretation and construction of them fixes January first of each year as the effective date for determining the status and values of intangible assets under such statutes. In fact the statutes admit of no other construction. This required holding renders these statutes workable, free from confusion, and makes them conform to the law applicable to ad valorem taxes upon tangible properties. Arts. 7211 and 7151, V.A.C.S.

■ We, therefore overrule the Company's contention that it became liable for and was required to pay a tax upon its intangible assets for the year 1944, by reason of its change of business in February 1944 to a business falling within a class defined by the intangible assets tax statutes.

The Company further contends that even though it be held not liable for an intangible assets tax for the year 1944, it, after its change in business in February 1944, fell within a class required to pay such tax regardless of the date or period of time upon which or for which its liability arose or endured, and hence it is exempted from the payment of a gross receipts tax for the last nine months of 1944.

If this position is correct, and we are correct in holding that the Company owes no tax upon its intangible assets for the year 1944, then the Company could operate for the last nine months of 1944 without paying either the intangible assets tax or the gross receipts tax.

The concluding sentence of Sec. (a), art. 7066b (the gross receipts tax statute here involved), provides: "Provided, however, carriers of persons or properties who are required to pay an intangible assets tax under the laws of this State, are hereby exempted from the provisions of this Article of this Act."

Art. 7105, V.A.C.S. (intangible assets tax statute), provides, in part: " * * * which additional tax shall be assessed and levied upon such intangible assets and property in the manner provided in Chapter 4, Title 122 of the Revised Civil Statutes of Texas, 1925."

Both of these statutes were a part of the same legislative enactment. Acts 1941, 47th Leg., p. 269, ch. 184.

Art. 7116, V.A.C.S., is contained in Chapter 4, Title 122, of the Revised Civil Statutes of 1925, and has been copied above.

■ This Article is not in any manner repealed by the legislative act of 1941. In fact it is carried forward and became a part of the new law by specific reference. Nor is there any repugnancy or inconsistency between art. 7116 and the concluding sentence of Sec. (a), art. 7066b, supra. These statutes should, therefore, be construed together. When this is done, the legislative intent plainly appears (1) that a taxpayer subject to both an intangible assets tax and a gross receipts tax should not necessarily be required to pay both at the same time or for the same period, but (2) that relief from liability for the gross receipts tax is absolutely conditioned upon payment of an intangible assets tax for the year during which such relief is sought.

■ The Company could not lawfully pay an intangible assets tax for the year 1944; its attempted payment as well as the action of the State Tax Board in making the assessment upon its intangible assets for that year, being without lawful authority, can have no legal effect.

It follows that the Company did not and could not qualify so as to relieve itself of the duty to pay a gross receipts tax for the last three quarters of the year 1944.

896

These holdings bring us to a consideration of the Company's attack upon the constitutionality of art. 7066b. It is claimed that our construction of this Article brings it in violation of Sec. 1, art. VIII of our Constitution, Vernon's Ann. St., providing that "Taxation shall be equal and uniform * * *." And Sec. 2 of the same Article providing that "All occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax; * * *"; also that the due process clause of the United States Constitution is violated.

The gist of the Company's complaint, in this respect, is that after it changed its character of business in February 1944, it is subject to a different tax from those engaged in a similar business on the first day of January, 1944; the only basis for such difference being the time when such business began.

This is true; yet the law applies with the same equality and the same uniformity to all classes which find themselves in the Company's predicament. The same so-called injustice or lack of equality could be attributed to our ad valorem tax laws upon tangible property. One person may own a building on January first, upon which he must pay taxes for the current year. Another person may construct an identical building after the first of January and not be liable for taxes thereon for the current year. This operation of these laws has never caused them to be declared unconstitutional. The resultant apparent inequality is uniformly enjoyed by those benefitted and uniformly suffered by those adversely affected.

We believe the following language of Chief Justice Cureton, in the case of Mumme v. Marrs, 120 Tex. 383, 40 S.W. 2d 31, 36, a complete answer to the attack upon the constitutionality of this statute: "As to whether or not a law secures due process and equal protection as required by the Constitution depends upon the subject on which it operates and the character of rights which it affects. The constitutional guarantee does not forbid the state from adjusting its legislation to differences in situation. Equal protection of laws is secured if the statutes do not subject the individual to arbitrary exercise of the powers of government. It is well settled that legislation is not open to objection if all who are brought under its influence are treated alike in the same circumstances. 9 Texas Jurisprudence, p. 553, § 117."

The judgment rendered below included a recovery of $50 under art. 7073, V.A.C.S., and a 10% penalty amounting to $1,465 under art. 7075, V.A.C.S. The State has confessed error as to both of these items and they will be deducted from the judgment.

Costs of this appeal are taxed against the State.

As reformed the judgment of the trial court is affirmed.

Reformed and affirmed.