ENRON CORP., Enron Gas Marketing, Inc., Panhandle Gas Company and Houston Pipe Line Company, Petitioners,

v.

SPRING INDEPENDENT SCHOOL DISTRICT, Respondent.

No. 94–1329.

Supreme Court of Texas.

May 10, 1996.

Berry D. Bowen, Charles E. Cheek, Houston, Mark G. Yudof, Austin, for petitioners.

Robert Mott, Michael J. Darlow, Joseph T. Longoria, Houston, for respondent.

OWEN, Justice, delivered the opinion for a unanimous Court.

Spring Independent School District challenges the constitutionality of a Tax Code provision that allows the market value of inventory to be appraised as of September 1 of the preceding tax year or January 1 of the applicable tax year at the election of the taxpayer. The trial court upheld the statute, but the court of appeals reversed, finding the statute constitutionally infirm on several grounds. 889 S.W.2d 562. We reverse the judgment of the court of appeals.

I

The property at issue is natural gas stored in the Bammel Reservoir. The Enron petitioners and others periodically inject natural gas into this salt dome storage facility where it is held for ultimate sale to consumers. There is no dispute that this gas is "inventory" within the meaning of section 23.12(f) of the Tax Code, which provides:

> (f) The owner of an inventory may elect to have the inventory appraised at its market value as of September 1 of the year preceding the tax year to which the appraisal applies by filing an application with the chief appraiser requesting that the inventory be appraised as of September 1.

Acts 1989, 71st Leg., R.S., ch. 796, § 16, 1989 Tex.Gen.Laws 3591, 3596 (amended 1993 and 1995) (current version at Tex.Tax Code § 23.12(f)).[1] The dispute is when this gas may be valued for ad valorem tax purposes.

Each of the petitioners is a subsidiary or indirect subsidiary of the Enron Corporation. We consider the petitioners and their respective inventories collectively for purposes of this discussion. As of September 1, 1989, Enron entities owned approximately 85 billion cubic feet of natural gas in the Bammel Reservoir. The market price of this gas according to Spring Independent School District was $1.57 per thousand cubic feet on that date. By January 1, 1990, the volume of gas Enron had in storage in this facility had increased to approximately 88 billion cubic feet, and SISD offered evidence that the market price of the gas had risen to $1.765 per thousand cubic feet. The Enron companies had elected to have their gas appraised as of September 1 under section 23.12(f).[2] According to SISD, this resulted in a loss of tax revenue of just under $15 million.

SISD filed an administrative challenge to the tax rolls pursuant to section 41.04 of the Texas Tax Code. The Harris County Ap-

---

1. The 1993 and 1995 amendments to section 23.12(f) are not at issue in this case. *See* Acts 1993, 73rd Leg., R.S., ch. 672, § 1, 1993 Tex. Gen.Laws 2501; Acts 1995, 74th Leg., R.S., ch. 836, § 1, 1995 Tex.Gen.Laws 4231; Acts 1995, 74th Leg., R.S., ch. 945, § 1, 1995 Tex.Gen.Laws 4727. We therefore cite to the 1989 version of the statute as section 23.12(f) of the Tax Code throughout this opinion.

2. To properly elect September 1 as a valuation date, the taxpayer must file an application with the chief appraiser. The September 1 valuation date does not take affect until the "tax year that begins after the next August 1 following the date the application is filed with the chief appraiser...." Tex.Tax Code § 23.12(f).

praisal District denied relief. After exhausting administrative remedies, SISD brought suit in district court against the Enron companies and others. At the time of trial, the parties remaining were SISD and the Enron entities. SISD contended that section 23.12(f) and (g)[3] violate section 1(a) of article VIII of the Texas Constitution which requires taxation to be equal and uniform. SISD argued that the statute impermissibly classifies inventory separately from other property, resulting in unequal treatment of inventory and noninventory owners, and that it results in disparate treatment among inventory owners. SISD further alleged that the preferential treatment accorded to inventory owners violates the equal protection clause of the Fourteenth Amendment to the United States Constitution. Finally, SISD contended that the statute operates to exempt property from taxation, in violation of section 2 of article VIII of the Texas Constitution. The trial court rendered a judgment upholding the constitutionality of the statute.

SISD appealed, urging only its contentions under the Texas Constitution. The court of appeals reversed the trial court's judgment on several grounds. The court concluded that the statute violates the requirement in section 1(a) of article VIII of the Constitution that taxes be equal and uniform because the statute gives an unequal and non-uniform advantage to inventory owners vis-a-vis other property owners. 889 S.W.2d at 566. The court of appeals was of the view that the Legislature has the power to make classifications for purposes of ad valorem taxation, but that there is no rational basis for classifying inventory apart from other property. *Id.* The court also concluded that section 1(a) of article VIII was violated because the statute resulted in unconstitutional inequality and non-uniformity within the class of inventory owners. *Id.* at 566–67. The court of appeals further held that the use of two valuation dates violates the constitutional principle of taxation based on market value in section 1

of article VIII of our Constitution because there are two values for the same property. *Id.* at 568. Finally, the court of appeals concluded that the statute results in an unconstitutional exemption of property from taxation in violation section 2 of article VIII. *Id.*

The Enron petitioners seek review in this Court.

## II

In determining the constitutionality of a statute, we begin with a presumption that it is constitutional. *HL Farm Corp. v. Self,* 877 S.W.2d 288, 290 (Tex.1994); *Spring Branch Indep. Sch. Dist. v. Stamos,* 695 S.W.2d 556, 558 (Tex.1985). Courts presume that the Legislature " 'understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds.' " *Smith v. Davis,* 426 S.W.2d 827, 831 (Tex.1968) (quoting *Texas Nat'l Guard Armory Bd. v. McCraw,* 126 S.W.2d 627, 634 (Tex.1939)). The wisdom or expediency of a law is for the Legislature to determine, not this Court. *Smith,* 426 S.W.2d at 831. Furthermore, the party challenging the constitutionality of a statute bears the burden of demonstrating that the enactment fails to meet constitutional requirements. *Stamos,* 695 S.W.2d at 558.

There are two provisions of our state Constitution at issue in this case, section 1 and section 2 of article VIII. We first consider the parties' contentions arising under section 1.

We have been called upon to apply section 1 in a number of contexts, but the question of the constitutionality of a statute of this nature is one of first impression. The starting point of our analysis is the requirement in section 1 that taxation shall be equal and uniform, and that ad valorem taxes on real

---

**3.** The school district originally challenged subsection (g) as well as (f). Subsection (g) provided for inventory appraisals for the 1990 tax year.

It expired by its own terms on January 1, 1991, and the question of its constitutionality is now moot.

and personal property must be in proportion to the value of the property:

### § 1. Equality and uniformity; tax in proportion to value; income tax; exemption of certain tangible personal property from ad valorem taxation

Sec. 1. (a) Taxation shall be equal and uniform.

(b) All real property and tangible personal property in this State, unless exempt as required or permitted by this Constitution, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law.

TEX. CONST. art. VIII, § 1(a) and (b).

We have held that ad valorem tax rates must be uniform for all types of property in accordance with the directive in section 1 of article VIII. We found a scheme of taxation unconstitutional where intangible assets were taxed on 100% of their value while other property in the county was on the tax rolls at 66–2/3% of its value. *Lively v. Missouri, K. & T. Ry.*, 120 S.W. 852, 856 (Tex.1909). We said in that case that taxation cannot be in the same proportion to the value of the property unless the value of all property is ascertained by the same standard. *Id. See also City of Arlington v. Cannon*, 271 S.W.2d 414, 417 (Tex.1954) (unlawful for board of equalization to assess some classes of property at a greater percentage than others). *See also City of Houston v. Baker*, 178 S.W. 820, 823 (Tex.Civ.App.—Galveston 1915, writ ref'd) (tax plan unconstitutional where land taxed at 70%, improvements at 25%, merchandise at 50%, and negotiable instruments and money exempted).

We have further held that section 1 of article VIII of our Constitution requires "value" for ad valorem tax purposes to be based on the reasonable market value of the property. *Whelan v. State*, 155 Tex. 14, 282 S.W.2d 378, 380 (1955). In *Whelan*, the taxing authority assessed non-producing oil and gas leases at a flat rate of $1.00 per acre, irrespective of market value, and assessed cattle at a flat rate of approximately $15 per head, again without regard to market value. We held this was clearly contrary to the constraints placed on the taxing authority by section 1. *Id. See also State v. Whittenburg*, 265 S.W.2d 569, 572 (Tex.1954) ("[o]ur courts have interpreted [section 1] to mean that assessed valuations shall be based on 'the reasonable cash market value' of property"); *Atlantic Richfield Co. v. Warren Indep. Sch. Dist.*, 453 S.W.2d 190, 196 (Tex.Civ. App.—Beaumont 1970, writ ref'd n.r.e.) (tax plan arbitrary and illegal where one-fourth of all property on rolls not assessed at market value); *Weatherly Indep. Sch. Dist. v. Hughes*, 41 S.W.2d 445, 445 (Tex.Civ.App.— Amarillo 1931, no writ) (valuation plan in which assessed value not based on market value is discriminatory and violates uniformity requirement).

■ However, we have long recognized that exact uniformity and equality is unattainable. *Whittenburg*, 265 S.W.2d at 572. Other jurisdictions with similar constitutional provisions have also recognized this principle. *See, e.g., Xerox Corp. v. Ada County Assessor*, 101 Idaho 138, 609 P.2d 1129, 1133 (1980); *State ex rel. Frizzell v. Dwyer*, 204 Kan. 3, 460 P.2d 507, 511 (1969). *See also* 84 C.J.S. *Taxation* § 22; 1 COOLEY, TAXATION § 259. A reasonable discrepancy between the actual value of the property and the value at which it is assessed for taxes is permissible to allow for a difference in judgment. *Dallas County v. Dallas Nat'l Bank*, 142 Tex. 439, 179 S.W.2d 288, 289 (1944). In *Dallas County*, the taxpayer's land was assessed at seven times its actual value. We held this discrepancy was too great and that it evidenced more than a "mere difference in judgment." *Id.*

■ We can conclude from these decisions that the Legislature could not constitutionally classify inventory separately from other property for at least some purposes. For example, inventory cannot be taxed at a rate different from other property, nor could it be exempted from taxation altogether. But these conclusions do not answer the question

before us. The core issue is whether the Legislature has the constitutional authority to provide for a method of determining the market value of inventory that differs from the method for arriving upon the market value of other property. There are no specific requirements in section 1 of article VIII for determining market value. It provides only that value is to be "ascertained as may be provided by law." TEX. CONST. art. VIII, § 1(b).

We conclude that the Legislature may constitutionally draw distinctions in the manner in which market value of property is determined for ad valorem tax purposes, as long as the classifications are not unreasonable, arbitrary, or capricious. While not directly analogous, we have recognized the authority of the Legislature to make classifications and the limits on that authority in reviewing the constitutionality of other taxes, including occupation, use, and sales taxes. *See Dancetown, U.S.A., Inc. v. State*, 439 S.W.2d 333, 335–37 (Tex.1969) (Legislature may impose differing occupation taxes on different classes, unless the classification has no reasonable basis or is arbitrary or capricious); *Calvert v. McLemore*, 163 Tex. 562, 358 S.W.2d 551, 552 (1962) (although there can be no doubt of the power of the Legislature to classify subjects of occupation taxes and to impose varying burdens, exemption of persons engaged in the same occupation as those taxed is discriminatory and unconstitutional); *State v. Southwestern Gas & Elec. Co.*, 145 Tex. 24, 193 S.W.2d 675, 677 (1946) (it is not unreasonable for the Legislature to exclude a certain class of sellers from an occupation tax); *Hurt v. Cooper*, 130 Tex. 433, 110 S.W.2d 896, 901 (1937) (mere differences in methods of conducting business sufficient to support the classification of merchants for levying occupation taxes); *Texas Co. v. Stephens*, 100 Tex. 628, 103 S.W. 481, 487 (1907) (business may be classified for occupation tax purposes). *See also Bullock v. ABC Interstate*

*Theatres, Inc.*, 557 S.W.2d 337, 341 (Tex.Civ. App.—Austin 1977, writ ref'd n.r.e.), *cert. denied*, 439 U.S. 894, 99 S.Ct. 253, 58 L.Ed.2d 240 (1978) (upholding sales and use tax); *American Transfer and Storage Co. v. Bullock*, 525 S.W.2d 918, 924 (Tex.Civ. App.—Austin, 1975 writ ref'd) (upholding sales tax).

The Legislature's authority to make classifications in levying occupation, use, and sales taxes unquestionably is broader than its authority to do so with respect to ad valorem taxes. Our Constitution requires that all real property and tangible personal property taxes be in proportion to the value of the property. TEX. CONST. art. VIII, § 1(b). There is no similar constraint on occupation, use, excise, or sales taxes. Indeed, it is implicit if not explicit in section 2 of article VIII that different occupation taxes may be levied upon different classes and that some occupations may escape tax altogether.[4] We so held in *Stephens*, 103 S.W. at 485 ("[t]he very language of the Constitution of the state implies power in the Legislature to classify the subjects of occupation taxes and only requires that the tax shall be equal and uniform upon the same class"), and in *Hurt*, 110 S.W. at 900–01. *See also American Transfer and Storage Co.*, 525 S.W.2d at 920–23 (discussing sections 1 and 17 of article VIII of our Constitution in conjunction with the authority of the Legislature to levy sales, excise, and use taxes). Although the considerable leeway given to the Legislature in *levying* sales, occupation, and excise taxes is not as broad in the area of ad valorem taxes, there is no constitutional impediment to utilizing differing methods for *determining market value* for ad valorem tax purposes. Stated another way, the Legislature may classify property differently in arriving upon its market value.

The requirements of uniformity and equality under section 1(a) of article VIII of the Texas Constitution and those under the

---

**4.** Section 2 of article VIII provides in part:

Sec. 2. (a) All occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax. . . .

TEX. CONST. art. VIII, § 2(a).

Fourteenth Amendment to the United States Constitution are similar. *See Smith,* 426 S.W.2d at 833–34; *Hurt,* 110 S.W.2d at 900–03; *Stephens,* 103 S.W. at 484–85. Accordingly, decisions examining the constitutionality of classifications for tax purposes under the Fourteenth Amendment can offer guidance.

A recent decision of the United States Supreme Court is instructive. California's Proposition 13 came under scrutiny in *Nordlinger v. Hahn,* 505 U.S. 1, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). The Proposition provided for the valuation of real property as of the 1975–76 tax year, unless the property was sold or newly constructed, in which case it would be valued at its current market value. *Id.* at 5, 112 S.Ct. at 2329. Certain exemptions from the reassessment provision allowed homeowners over the age of fifty-five to carry forward their previous base-year assessments when they sold or replaced their homes and allowed parents to transfer a principal residence to their children. Over time, Proposition 13 resulted in tremendous disparities in the tax burden. *Id.* at 6, 112 S.Ct. at 2329–30. The Supreme Court found no violation of the Equal Protection clause, concluding that the protections of the United States Constitution were satisfied so long as there was a "plausible policy reason for the classification." *Id.* at 11, 112 S.Ct. at 2332. The Court held that this standard is "especially deferential in the context of classifications made by complex tax laws." *Id. See also Chicago Pac. Corp. v. Limbach,* 65 Ohio St.3d 432, 605 N.E.2d 8, 12 (1992) (citing *Nordlinger* and holding that the state had a legitimate interest in levying a tax on the average value of business inventory to avoid the inequality that could result from fluctuating inventories).

Armed with these principles, we must determine whether a statute that permits inventory, but not other property, to be valued on one of two alternative dates violates section 1 of article VIII.

### A

◼ SISD contends and the court of appeals held that the use of two tax dates gives inventory owners an election that is denied other property owners. SISD offered evidence that properties other than those of the Enron companies experienced substantial increases in value from September 1 to January 1. Those properties were assessed as of the later date and consequently more taxes were paid by their owners. A specific example cited by SISD and the court of appeals was a Motorola plant which in December received machinery having a value of $100 million. Other examples relied upon by the court of appeals were new construction projects underway between September 1 and January 1, and existing commercial properties upon which additional construction or improvements were completed within this time frame. There was evidence that the value of each of these properties was lower on September 1 than on January 1. SISD urges that this scheme violates the equality and uniformity provisions of section 1 of article VIII.

Our Court has never been presented with such an argument, but it is not a new one. The Supreme Court of the United States addressed a similar contention in *Thomas v. Gay,* 169 U.S. 264, 281–82, 18 S.Ct. 340, 346–47, 42 L.Ed. 740 (1898). In that case, the laws of Oklahoma provided that real estate would be valued for tax purposes on January 1, that personal property in organized counties would be valued on February 1, and that personal property on Indian reservations would be valued on May 1. *Id.* at 281, 18 S.Ct. at 346. A taxpayer owning cattle pastured on an Indian reservation contended this resulted in an unequal assessment that constituted "unjust discrimination" and that violated the "principle of uniformity." *Id.* at 280–81, 18 S.Ct. at 346. He argued that his cattle were fatter on May 1 and thus more valuable than on February 1. *Id.* at 281, 18 S.Ct. at 346. Other cattle and other personal property were assessed as of the earlier date. In response, the taxing authority pointed out that the cattle at issue were not herded onto the Indian reservation until April of each year and would escape taxation but for the later assessment date. *Id.*

The Supreme Court observed that it was not unusual for tax laws to authorize the assessment of different classes of property at different dates, and even to assess the same classes of property in different localities at different dates. *Id.* at 281, 18 S.Ct. at 346. "Such matters of regulation must be supposed to be within the power of the State or Territory, and to have their reasons in special facts known to the legislature." *Id.* The Court cited three decisions where similar challenges to a tax plan were rejected, *Nelson Lumber Co. v. Loraine*, 22 F. 54 (W.D.Wis.1884) (saw logs assessed on May 1 for Wisconsin residents and April 1 for non-residents), *State v. New Lindell Hotel Co.*, 9 Mo.App. 450 (1881) (real property in city of St. Louis assessed every year but property outside the city assessed every two years), and *People v. Commissioners of Taxes*, 91 N.Y. 593 (law providing for different times for assessments). *Id.* at 281–82, 18 S.Ct. at 346–47. *See also Shotwell v. Moore*, 129 U.S. 590, 598–99, 9 S.Ct. 362, 364, 32 L.Ed. 827 (1889) (commenting that Ohio statute that assessed taxes on the monthly average value of the merchandise or goods was more equitable and more likely to ascertain the value of the property during the year than one ascertaining value on a fixed date).

An early decision from another jurisdiction addressing disparities in the timing of property tax assessments is *Spokane & I.E.R. Co. v. Spokane County*, 75 Wash. 72, 134 P. 688, 694–95 (1913). The constitutional provision under consideration in that case was similar to section 1 of article VIII of our Constitution. *See id.* at 694. The statute challenged by the taxpayer provided that the tax value of real property owned by a railroad would be set at the value found by the Public Service Commission. *Id.* at 691. The Commission could ascertain the value of the railroad's property at any time, while other property was assessed as of March 1. The Supreme Court of Washington found the argument that this could lead to different standards of value "ingenious," but nevertheless concluded that the Legislature was permitted to assess certain classes of property at one time and other classes at another time, even in light of constitutional provisions requiring uniform taxation. *Id.* at 694–95.

A number of courts have upheld a tax plan that values inventory on a basis other than a single assessment date, although in most of those cases, the argument that this would result in unequal tax treatment for other property owners was not raised. *See, e.g., Northern Commercial Co. v. King County*, 63 Wash.2d 639, 388 P.2d 546, 548–49 (1964) (upholding assessment based on average monthly inventory and noting that at that time, seventeen states had similar statutory provisions); *Chicago Pac. Corp.*, 605 N.E.2d at 12 (use of average value of inventory constitutional); *Ford Motor Co. v. Michigan State Tax Comm'n*, 400 Mich. 499, 255 N.W.2d 608, 612 (1977) (upholding statute allowing owner to elect to have some inventories in the taxing district valued on tax day and other inventories valued on monthly average). Several other states have enacted statutes that treat inventories differently from other property for tax purposes.[5]

In the case before us, the court of appeals recognized that no other court has found a

---

5. These include: Ala.Code § 40–18–6 (provides for an alternative method for the valuation of inventory property); Ark.Code Ann. § 26–26–1207 (provides for an alternative method for the valuation of motor vehicle inventory); Cal Rev. & Tax. Code § 219 (exempts business inventory from taxation); Conn.Gen.Stat. § 12–81(54) (exempts business inventory from taxation); Idaho Code § 63–105Y (exempts business inventory from taxation); Ky.Rev.Stat.Ann. § 132.028 (separately classifies and taxes inventory for motor vehicle dealers); La.Rev.Stat.Ann. § 1961 (separately classifies business inventory and taxes at average assessable value); Md.Code Ann. § 7–222 (exempts business inventory from taxation); N.H.Rev.Stat.Ann. §§ 75:4, 5, 8 (separately classifies and taxes inventory); N.J.Stat.Ann § 54:11D–7 (provides for an alternative valuation method of inventory); Ohio Rev.Code Ann. § 5711.15–5711.16 (separately classifies and treats inventory); Okla.Stat Ann. tit. 68, § 5401 (exempts farm equipment inventory from ad valorem taxation); Or.Rev.Stat. § 307.400 (exempts all inventory from ad valorem taxation); R.I.Gen. Laws § 44–3–3 (exempts manufacturing inventory from taxation); S.C.Code Ann. § 12–37–220 (exempts manufacturing inventory from ad valorem taxation).

violation of equality and uniformity requirements where some classes of property are valued on a date other than "the standard tax date" while other classes are not. 889 S.W.2d at 566–67. However, the court of appeals concluded that section 23.12(f) is materially different from other statutes because it allows the *taxpayer* to choose the valuation date. *Id.* at 567. The court contrasted section 23.12(f) with a statute upheld by an intermediate appellate court in the state of Washington. The Washington statute allowed the tax assessor to capture the value of improvements to real property by choosing a July 31 assessment date. *Fifteen–O–One Fourth Ave. Ltd. v. State Dep't of Revenue,* 49 Wash.App. 300, 742 P.2d 747, 748–49 (1987, review denied). Similarly, the court in *Northern Commercial Co.,* 388 P.2d at 549, upheld the constitutionality of a statute that allowed inventory to be valued on January 1 or by the monthly average value at the election of either the taxpayer or the assessor where the average stock held was not fairly represented as of January 1. The Supreme Court of Washington reasoned that the statute increased uniformity because it was designed to assess the true and fair value of the inventory. *Id.* *Compare Ford Motor Co.,* 255 N.W.2d at 612 (upholding statute permitting *the taxpayer* to exercise an election to have its inventory valued on an average monthly basis).

But *who* makes the election is not determinative of whether section 23.12(f) is an arbitrary or capricious classification by the Legislature. States that allow the assessor to choose the valuation date have made a legislative decision to maximize tax revenue. States, like Texas, that allow the taxpayer to make an election have given priority to other goals. The policy embodied in section 23.12(f) reflects a decision by the Legislature to allow any difference in the value of inventory on the two different dates to inure to the benefit of the taxpayer, rather than the coffers of the state. The Legislature also could reasonably have concluded that generally, there are greater fluctuations in the value of inventory over the course of a year

than in the value of other property. Some inventories may be subject to seasonal fluctuations, as an example. Allowing the taxpayer to choose the valuation date for inventory may reflect the Legislature's desire to promote assessments on a value that is more reflective of true market value.

The specific inventory at issue in this case is natural gas. The Legislature has issued a declaration of policy stating that the underground storage of natural gas promotes the public interest and welfare by building reserves for orderly withdrawal in periods of peak demand, thereby making natural gas more readily available to residential, commercial, and industrial customers. TEX.NAT. RES.CODE § 91.172. The winter months are typically a period of peak demand for natural gas. It is not arbitrary or capricious for the Legislature to permit the taxable value of natural gas inventories to be determined on a date other than January 1, when inventories may be higher than at other times of the year. The Legislature could reasonably conclude that storage of natural gas for the needs of the citizens of this state should not be discouraged or penalized by a taxation scheme.

The Legislature has chosen to make a distinction in the method of valuing inventory. The touchstone for determining "value" under section 1(b) of article VIII of our Constitution is market value. There is no contention by SISD that the value of the natural gas as of September 1 was determined on any basis other than market value. We cannot say that the method for valuing inventory under section 23.12(f) is so arbitrary and unreasonable that it is unconstitutional.

### B

SISD also challenged the constitutionality of section 23.12(f) on the basis that it improperly distinguished between inventory owners because some elected the earlier assessment date while others did not. This argument is not cogent. Every owner of inventory is entitled to make an election un-

der section 23.12(f). There is no disparate treatment among inventory owners. Further, the fact that inventory owners have two alternative dates on which their property may be valued can temper the disparity caused by a single appraisal date. Some inventory owners will benefit more than others from the availability of two valuation dates, but this is no more unequal than applying a single date. SISD conceded, as it must, that the use of more than one appraisal date provides greater equality and uniformity within the class.

Perhaps the most equitable system of valuation would permit an owner to have its inventory valued on a monthly average basis over a year's time. *See, e.g.,* Tex.Tax Code §§ 23.121(b), 23.12D(b) (providing for the valuation of motor vehicle, vessel, and outboard motor dealer inventory based on an average of total annual sales). But that is the prerogative of the Legislature. As we have held, exact uniformity and equality is not required and as a practical matter is unattainable.

### C

■ The court of appeals also concluded that the use of two tax dates for valuation was impermissible because January 1 has had a long tradition in Texas. 889 S.W.2d at 567. The January 1 date is wholly a creature of statutes. It is not a constitutional requirement.

Only one of the cases upon which the court of appeals relies for the proposition that this state has strongly adhered to January 1 as a single tax date remotely touches upon the constitutional issues before us. In *Texas Consolidated Transportation Co. v. State,* 210 S.W.2d 891 (Tex.Civ.App.—Austin 1948, writ ref'd), the issue was whether the taxpayer was obligated to pay an intangible assets tax during the tax year in question and ac-

cordingly, whether it qualified for an exemption from a gross receipts tax. *Id.* at 893. The court briefly discussed the need to ascertain property values as of a certain date to comport with principles of uniformity. *Id.* at 894–95. But this case did not hold and does not stand for the proposition that the "certain date" must be a single day of the year, as opposed to two dates or an average value over a certain period of time.

None of the other cases discussed by the court of appeals is apposite to the questions at hand. *Texas City v. J.L. Martin Inv. Co.,* 222 S.W.2d 139, 141 (Tex.Civ.App.—Galveston 1949, writ ref'd) (property not within city limits as of statutory date of January 1 not subject to tax); *State v. Republic Natural Gas Co.,* 181 S.W.2d 592, 594 (Tex.Civ.App.—San Antonio 1944, writ ref'd w.o.m.) (circumstances developing after statutory date of January 1 cannot be considered in valuing property); *Kirby v. Transcontinental Oil Co.,* 33 S.W.2d 472, 474 (Tex.Civ.App.—Waco 1930, writ ref'd) (assessor should not taken into consideration fact that oil was discovered on property after statutory January 1 tax date).

Section 23.12(f) of the Tax Code does not violate section 1 of article VIII of our Constitution.

### II

■ SISD contends that section 23.12(f) has resulted in an exemption from taxation in violation of section 2 of article VIII.[6] SISD points out that the volume of gas stored by the Enron entities increased by approximately three billion cubic feet between September 1 and January 1. That increase has escaped taxation, SISD argues.

Here again, this position finds no support in logic. Any fixed tax date can result in increased value escaping taxation. If the natural gas at issue had been valued on

---

**6.** Section 2(a) enumerates specific exemptions from taxation and then provides:

(a) ... [A]nd all laws exempting property from taxation other than the property mentioned in this Section shall be null and void.

Tex. Const. art. VIII, § 2(a). Natural gas held in reservoirs for resale is not exempted from taxation under section 2(a).

January 1, and the Enron entities increased the volume of gas in storage within the following thirty days, that increase would not be subject to taxation. The same is true of other property. Improvements to a home or commercial property after January 1 are not included in the assessment of value for that tax year. The purchase of equipment after January 1 will not result in increased tax liability for that tax year. The increased value "escapes" taxation.

The crux of SISD's complaint under section 2 of article VIII of our state Constitution is the same as its complaint under section 1—the *method* used by the Legislature to value property for ad valorem tax purposes. This Court recognized the distinction between determining taxable value and a tax exemption in *Republic Insurance Co. v. Highland Park Independent School District,* 102 S.W.2d 184, 193 (Tex.1937). The statute at issue allowed for the deduction of the reserves of an insurance company from the valuation of its personal property in computing ad valorem taxes. *Id.* at 186. We concluded that the question was not one of exemption, but of "the fixing of a standard of valuation." *Id.* at 193. It was purely within "the exercise of discretion and judgment on the part of the Legislature" to permit the deduction of these potential liabilities. *Id.* See also *Hardin v. Central Am. Life Ins. Co.,* 374 S.W.2d 881, 883–84 (Tex.1964) (statute was a valuation statute, not an exemption statute, allowing deduction of insurance company's reserve from total valuation of assets). The natural gas inventories at issue here are not deleted from the tax rolls entirely, as was the case in *Whelan v. State,* 155 Tex. 14, 282 S.W.2d 378, 384 (1955) (omission of all bank deposits from tax rolls was an exemption prohibited by the Constitution, but complaining taxpayers entitled to a reassessment of their properties only if they could show substantial injury). The only issue in this case is the timing of the valuation.

SISD argues that the Enron entities could avoid taxation on all or a portion of their respective inventories by transferring natural gas among subsidiaries and then electing different tax valuation dates. SISD concedes, however, that this did not occur, even though one of the Enron entities owned no gas as of September 1, but did own a substantial quantity of gas on the following January 1. We need not decide the consequences of transfers that occur for tax evasion purposes. We do note that a similar factual pattern was at issue in *Shotwell v. Moore,* 129 U.S. 590, 9 S.Ct. 362, 32 L.Ed. 827 (1889). One of the statutes in *Shotwell* provided for a single tax valuation date for some but not all property. The defendant withdrew his bank deposits for a few days surrounding that date each year and purchased tax exempt United States securities in an effort to avoid taxation. The state nevertheless taxed the bank deposits held throughout the year under another statute that provided for valuation of certain property on an average monthly basis. The United States Supreme Court held that the State's actions were constitutional. *Id.* at 598, 9 S.Ct. at 364.

\* \* \* \* \* \*

We conclude that the Legislature has the authority to establish a method of determining the market value of inventory that differs from the method of valuing other property for ad valorem tax purposes and that the Legislature properly exercised that authority in enacting section 23.12(f) of the Tax Code. We reverse the judgment of the court of appeals and render judgment that SISD take nothing.