## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

April 20, 2005

The Honorable Bill Hill
Dallas County District Attorney
Administration Building
411 Elm Street, Suite 500
Dallas, Texas 75202-3384

Opinion No. GA-0317

Re: Whether section 6.025(d) of the Tax Code violates article VIII, sections 1(a), (b) and 18(c) of the Texas Constitution  (RQ-0285-GA)

Dear Mr. Hill:

In some cases, property subject to ad valorem taxation will lie in two or more appraisal districts and will be subject to multiple tax appraisals. If after appraising a property in overlapping appraisal districts the chief appraisers disagree as to the appraised or market value of the property, section 6.025(d) of the Tax Code requires the chief appraisers to enter into their districts' appraisal records the lowest appraised and market values from all the values determined by each appraisal district. *See* TEX. TAX CODE ANN. § 6.025(d) (Vernon Supp. 2004-05). You ask whether section 6.025(d) violates three provisions of article VIII of the Texas Constitution:  section 1(a), which requires that taxes be "equal and uniform"; section 1(b), which requires that all property be "taxed in proportion to its value"; and section 18(c), which requires the legislature to "provide for a single board of equalization for each appraisal entity consisting of qualified persons residing within the territory appraised by that entity." *See* TEX. CONST. art. VIII, §§ 1(a)-(b), 18(c).[1]

## I.      Legal Background

Before addressing your constitutional questions, we briefly review the legal framework for appraising property for ad valorem taxation.

### A.      Property Appraisals

Article VIII, section 1(b) of the Texas Constitution provides that "[a]ll real property and tangible personal property in this State . . . shall be taxed in proportion to its value, which shall be ascertained as may be provided by law." *Id.* § 1(b). Courts have long held that the constitution "requires 'value' for ad valorem tax purposes to be based on the reasonable market value of the property." *Enron Corp. v. Spring Indep. Sch. Dist.*, 922 S.W.2d 931, 935 (Tex. 1996); *Whelan v.*

---

[1]*See* Letter from Honorable Bill Hill, Dallas County District Attorney, to Honorable Greg Abbott, Texas Attorney General, at 2-3 (Oct. 22, 2004) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

*State*, 282 S.W.2d 378, 380 (Tex. 1955). The Tax Code defines "market value," *see* TEX. TAX CODE ANN. § 1.04(7) (Vernon 2001),[2] and generally requires that "all taxable property is appraised at its market value as of January 1," *id.* § 23.01(a). The Tax Code also establishes several appraisal methods for determining market value. *See id.* § 23.0101 ("In determining the market value of property, the chief appraiser shall consider the cost, income, and market data comparison methods of appraisal and use the most appropriate method."); *see also id.* §§ 23.011-.9807 (Vernon 2001 & Supp. 2004-05) (governing specific appraisal methods). The Tax Code also uses the term "appraised value," and, in some cases, a property's appraised value may differ from its market value. *See generally* Tex. Att'y Gen. Op. No. GA-0283 (2004).[3]

The constitution also provides for tax appraisal administration at the local level. Article VIII, section 18 provides in pertinent part:

> (b) A single appraisal within each county of all property subject to ad valorem taxation by the county and all other taxing units located therein shall be provided by general law. The Legislature, by general law, may authorize appraisals outside a county when political subdivisions are situated in more than one county or when two or more counties elect to consolidate appraisal services.

> (c) The Legislature, by general law, shall provide for a single board of equalization for each appraisal entity consisting of qualified persons residing within the territory appraised by that entity. Members of the board of equalization may not be elected officials of the county or of the governing body of a taxing unit.

---

[2]Section 1.04(7) of the Tax Code defines "market value" as "the price at which a property would transfer for cash or its equivalent under prevailing market conditions if: (A) exposed for sale in the open market with a reasonable time for the seller to find a purchaser; (B) both the seller and the purchaser know of all the uses and purposes to which the property is adapted and for which it is capable of being used and of the enforceable restrictions on its use; and (C) both the seller and purchaser seek to maximize their gains and neither is in a position to take advantage of the exigencies of the other." TEX. TAX CODE ANN. § 1.04(7) (Vernon 2001).

[3]For example, under section 23.23(a) of the Tax Code, a residence homestead's appraised value "may not exceed the lesser of" (1) the property's market value, or (2) the sum of:

> (A) 10 percent of the appraised value of the property for the last year in which the property was appraised for taxation times the number of years since the property was last appraised;

> (B) the appraised value of the property for the last year in which the property was appraised; and

> (C) the market value of all new improvements to the property.

*Id.* § 23.23(a) (Vernon Supp. 2004-05).

> (d) The Legislature shall prescribe by general law the methods, timing, and administrative process for implementing the requirements of this section.

TEX. CONST. art. VIII, § 18.

The legislature has fulfilled its duty under article VIII, section 18(b) to provide for a single tax appraisal of property by enacting the Property Tax Code, chapters 1 through 43 of the Tax Code. *See Wilson v. Galveston County Cent. Appraisal Dist.*, 713 S.W.2d 98, 101 (Tex. 1986). The Property Tax Code provides for appraisal districts in each county and charges these districts with appraising property within the district. *See id.* Each appraisal district is administered by a chief appraiser. *See* TEX. TAX CODE ANN. § 6.05 (Vernon 2001). The purpose of each district is to place a single value on each piece of taxed property located within the district. *See* TEX. CONST. art. VIII, § 18(b). Under the Tax Code, each taxing unit participating in an appraisal district taxes property according to the value determined by the appraisal district. *See* TEX. TAX CODE ANN. § 6.01 (Vernon 2001).

The legislature has fulfilled its duty under article VIII, section 18(c) to "provide for a single board of equalization for each appraisal entity," TEX. CONST. art. VIII, § 18(c), by providing for an appraisal review board for each appraisal district. *See* TEX. TAX CODE ANN. § 6.41 (Vernon Supp. 2004-05). Appraisal review boards determine, among other matters, property valuation protests initiated by property owners and challenges initiated by taxing units. *See id.* § 41.01 (Vernon 2001). With respect to appraisals, a taxing unit is entitled to challenge "the level of appraisals of any category of property in the district or in any territory in the district, but not the appraised value of a single taxpayer's property." *Id.* § 41.03(a)(1).

## B.    Overlapping Appraisal Districts and Multiple Property Appraisals

Under section 6.02 of the Tax Code, an appraisal district's boundaries are generally the same as the county's boundaries. *See id.* § 6.02(a). However, a taxing unit that has boundaries extending into two or more counties may choose to participate in only one of the appraisal districts, and, in that event, the boundaries of the district chosen extend outside the county to the extent of the unit's boundaries. *See id.* § 6.02(b). This is consistent with article VIII, section 18, which expressly permits the legislature to authorize an appraisal district to appraise property outside the county in these circumstances. *See* TEX. CONST. art. VIII, § 18(b) ("The Legislature, by general law, may authorize appraisals outside a county when political subdivisions are situated in more than one county or when two or more counties elect to consolidate appraisal services."). Because an appraisal district's boundaries may extend outside the county into other counties, property may lie in two or more overlapping appraisal districts and, in such a case, would be appraised by each district.

Each appraisal district is required to appraise property at its market value pursuant to appraisal methods authorized by the Tax Code, and, in theory, appraisal districts appraising the same property should arrive at the same values. Sometimes this is not the case, however. The reasons for this vary. As this office recently explained, "'property appraisal is an inexact process.'" Tex. Att'y

Gen. Op. No. GA-0283 (2004) at 2 (citation omitted). The Tax Code itself may also lead to different valuations because

> each appraisal district with jurisdiction over a particular piece of property may calculate the property's appraised value using different methods. *See* TEX. TAX CODE ANN. § 23.0101 (Vernon 2002) (directing a chief appraiser to consider alternate appraisal methods). . . . Furthermore, overlapping appraisal districts may use different appraisal cycles so that one district may reappraise property every two years, while another district reappraises property every three years. *See* [*id.*] § 25.18(a)-(b) (requiring each appraisal office to implement a plan to reappraise property at least once every three years).

*Id.* at 2-3.

Section 6.025 of the Tax Code, the provision at issue in your query, governs the duty of chief appraisers of overlapping appraisal districts with respect to the property located in the territory in which each of the districts has appraisal jurisdiction. It requires chief appraisers of overlapping appraisal districts to enter into a written understanding that:

> (1) permits each appraiser to have access to and use information appropriate to appraisals, including a record of an exemption application, rendition, or other property owner report;
>
> (2) eliminates differences in the information in appraisal records of the districts, including information relating to ownership of property, the description of property, and the physical characteristics of property; and
>
> (3) contains the form of a written advisory prescribed by the comptroller informing the owners of property that reports and other documents required of the owners must be filed with or sent to each appraisal district and that the owners should consider sending any other document relating to the property to each appraisal district.

TEX. TAX CODE ANN. § 6.025(a) (Vernon Supp. 2004-05). Section 6.025(c) requires the chief appraisers of overlapping appraisal districts "to the extent practicable [to] coordinate their appraisal activities so as to encourage and facilitate the appraisal of the same property appraised by each district at the same value." *Id.* § 6.025(c).

Your query focuses on section 6.025(d), which governs the appraised and market value of property in overlapping appraisal districts in the event the chief appraisers are not able to agree on the same values:

> If on May 1 all the chief appraisers of the appraisal districts described by Subsection (a) in which a parcel or item of property is located are not in agreement as to the appraised or market value of the property, on that date each of the chief appraisers shall enter as the appraised or market value of the property on the appraisal records of the appropriate appraisal district the lowest appraised or market value of the property as determined by any of the chief appraisers. If as a result of a protest, appeal, or other action the appraised or market value of the property is subsequently reduced in any of the appraisal districts, the chief appraiser shall notify each of the appraisal districts of the reduced appraised or market value. The chief appraiser of each appraisal district shall enter that reduced appraised or market value on the appraisal records as the appraised or market value of the property. If the appraised or market value is reduced in more than one appraisal district, each chief appraiser shall enter the lowest of those values on the appraisal records.

*Id.* § 6.025(d). This provision requires chief appraisers with overlapping jurisdictions to enter the lowest appraised and market value for a property (1) on May 1, and (2) thereafter if the property's appraised or market value is reduced "as a result of a protest, appeal, or other action." *Id.*; *see also* Tex. Att'y Gen. Op. No. GA-0283 (2004) at 7-8 (concluding that section 6.025(d) of the Tax Code requires the chief appraiser of each of the overlapping districts to enter in the appraisal records the lowest values, appraised and market, listed by any of the overlapping districts).[4]

## II.     Analysis

You ask about Tax Code section 6.025(d)'s constitutionality under article VIII, sections 1(a), (b) and 18(c). *See* Request Letter, *supra* note 1, at 2-3. In considering a tax appraisal statute's constitutionality, the Texas Supreme Court has applied the following presumptions:

> [W]e begin with a presumption that it is constitutional. *HL Farm Corp. v. Self*, 877 S.W.2d 288, 290 (Tex. 1994); *Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 558 (Tex. 1985). Courts presume that the Legislature "'understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds.'" *Smith v. Davis*, 426 S.W.2d 827, 831 (Tex. 1968) (quoting *Texas Nat'l Guard Armory Bd. v. McCraw*, 126 S.W.2d 627, 634 (Tex. 1939)). The wisdom or expediency of a law is for the Legislature to determine, not this Court. *Smith*, 426 S.W.2d at 831.

---

[4]Attorney General Opinion GA-0283 noted but did not resolve the constitutional issues raised by this request. *See* Tex. Att'y Gen. Op. No. GA-0283 (2004) at 4 n.2.

*Enron Corp.*, 922 S.W.2d at 934. Accordingly, we apply the same presumptions in considering your questions about section 6.025(d) of the Tax Code. We also keep in mind the legislature's authority under article VIII of the constitution to adopt appraisal methods to ascertain value and to establish the appraisal and appraisal equalization system. *See* TEX. CONST. art. VIII, §§ 1(b) ("All real property and tangible personal property in this State . . . shall be taxed in proportion to its value, *which shall be ascertained as may be provided by law*.") (emphasis added), 18(b) ("A single appraisal within each county of all property subject to ad valorem taxation by the county and all other taxing units located therein *shall be provided by general law*.") (emphasis added), (c) ("*The Legislature, by general law*, shall provide for a single board of equalization for each appraisal entity . . . .") (emphasis added), (d) ("*The Legislature shall prescribe by general law* the methods, timing, and administrative process for implementing the requirements of this section.") (emphasis added).

A.        **Article VIII, Section 1(a)-(b):  Value and Equality and Uniformity**

Your first concern is that section 6.025(d) violates the article VIII, section 1(b) requirement that property be taxed in proportion to its value. *See* TEX. CONST. art. VIII, § 1(b). You point out that value in this sense means market value and that the Tax Code and case law recognize a limited number of methods to determine market value. *See* Request Letter, *supra* note 1, at 2; *see also Nootsie Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996); TEX. TAX CODE ANN. §§ 23.0101-.9807 (Vernon 2001 & Supp. 2004-05) (appraisal methods).

You argue, in essence, that section 6.025(d) requires a chief appraiser to appraise a property at a value other than its market value:

> Section 6.025(d) requires the selection of the lowest value determine[d] in different markets, with different sets of comparables. Dallas County believes that <u>automatic</u> application of the lowest value to a property merely because it falls within overlapping districts does not establish value based on market value.

Request Letter, *supra* note 1, at 2. This contention ignores the fact that the second appraisal district is also required by statute to appraise the property at market value using an authorized method. We must assume as a general matter that appraisal districts appraise property pursuant to the Tax Code, arriving at legally permissible values. Moreover, article VIII, section 1 permits "[a] reasonable discrepancy between the actual value of the property and the value at which it is assessed for taxes . . . to allow for a difference in judgment." *Enron Corp.*, 922 S.W.2d at 935.

"A statute is not facially invalid unless it could not be constitutional under any circumstances." *Appraisal Review Bd. of Galveston County v. Tex-Air Helicopters, Inc.*, 970 S.W.2d 530, 534 (Tex. 1998). We cannot conclude that all valuations mandated by section 6.025(d) will offend article VIII, section 1(b). In some instances the appraisal district with the lowest value will have determined that value according to methods permitted by the Tax Code, arriving at a value that reasonably reflects the property's actual market value. Requiring another appraisal district to use such a value does not violate the constitutional requirement that property be taxed in proportion to

its value. Because section 6.025(d) valuations will be constitutional in some circumstances, we cannot conclude that section 6.025(d) on its face violates article VIII, section 1(b). *See id.*

Second, you ask whether section 6.025(d) violates article VIII, section 1(a), which requires that "[t]axation shall be equal and uniform." TEX. CONST. art. VIII, § 1(a). The Texas Supreme Court has "long recognized that exact uniformity and equality is unattainable," *Enron Corp.*, 922 S.W.2d at 935, and that "the Legislature may constitutionally draw distinctions in the manner in which market value of property is determined for ad valorem tax purposes," *id.* at 936. Such classifications will comport with article VIII, section 1(a), "as long as the classifications are not unreasonable, arbitrary, or capricious." *Id.* An ad valorem tax classification with a "'plausible policy reason'" will pass constitutional muster. *Id.* at 937 (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992) (addressing the validity of tax classifications under the Equal Protection Clause)). However, your letter asserts that any classification created by section 6.025(d) that distinguishes between the valuation of property based on whether it is appraised by overlapping appraisal districts is "clearly . . . arbitrary." *See* Request Letter, *supra* note 1, at 3.

As we have noted, article VIII, section 18 permits the legislature, by general law, to authorize appraisals outside a county "when political subdivisions are situated in more than one county." TEX. CONST. art. VIII, § 18(b). As a result of the constitutionally authorized system of overlapping appraisal districts, a property may be subject to two or more appraisals. The legislature is clearly authorized to adopt laws governing overlapping appraisal districts' authority with respect to such property. *See id.* § 18(b), (d). In subsections (a) through (c) of section 6.025, the legislature has required overlapping appraisal districts to cooperate in order to appraise properties in their overlapping jurisdictions at the same values. *See* TEX. TAX CODE ANN. § 6.025(a)-(c) (Vernon Supp. 2004-05). The legislative history suggests that the legislature adopted section 6.025(d) to further encourage appraisal districts to arrive at the same values by requiring them to record the lower values in the event they are unable to agree on common values. *See* HOUSE COMM. ON LOCAL GOV'T WAYS & MEANS, BILL ANALYSIS, Tex. H.B. 703, 78th Leg., R.S. (2003); SENATE COMM. ON FINANCE, BILL ANALYSIS, Tex. H.B. 703, 78th Leg., R.S. (2003).

We believe that a court would conclude that any distinction section 6.025(d) draws between the valuation of property based on whether the property is appraised by overlapping appraisal districts is based on a plausible policy reason – to avoid varying valuations in overlapping appraisal districts. *See Enron Corp.*, 922 S.W.2d at 936-37. Given the legislature's authority to regulate overlapping appraisals and the reasonableness of its goal to achieve uniform appraisals in overlapping appraisal districts, we cannot conclude that section 6.025(d) imposes a classification that is unreasonable, arbitrary, or capricious as a matter of law.

However, we have received a number of briefs from appraisal districts arguing that section 6.025(d) may be unconstitutional as applied to particular fact situations.[5] As these briefs point out,

---

[5] *See* Brief from Roy L. Armstrong, McCreary, Veselka, Bragg & Allen, P.C., on behalf of the Central Appraisal District of Taylor County, to Honorable Greg Abbott, Texas Attorney General, at 2-3, 6 (Nov. 30, 2004) [hereinafter (continued...)]

in some instances the lower market or appraised value may be significantly below the property's actual market value. For example, an appraisal district must reappraise a property at least once every three years. *See* TEX. TAX CODE ANN. § 25.18(a)-(b) (Vernon 2001). Valuations may differ because appraisal districts are on different reappraisal cycles. The appraisal district with the higher value for a property may have just reappraised the property in a period of rising property values whereas the appraisal district with the lower value has not done so for two years. In that case, the lower value may be drastically below the current market value. Moreover, in some such instances, the section 6.025(d) requirement that the first appraisal district use the other district's values for property in the overlapping area may cause the property values in that area to be so much lower than property values in the rest of the first appraisal district that taxation by taxing units in that district will not satisfy the equal and uniform requirement. *See Harris County Appraisal Dist. v. United Investors Realty Trust*, 47 S.W.3d 648, 654 (Tex. App.–Houston [14th Dist.] 2001, pet. denied) ("[I]t is unfair, and constitutionally prohibited, to require one taxpayer to pay a tax based on market values if other taxpayers are paying a rate that is lower than the market value of their properties. If we were to allow this, one landowner would be paying property taxes disproportionately to other landowners. The constitution expressly prohibits this."). Although requiring uniform appraisals in overlapping appraisal districts may be a reasonable legislative policy as a general matter, in some cases requiring uniform appraisals may offend article VIII, section 1(a) and (b).[6]

A court could determine in a particular case that a property value required by section 6.025(d) fails to appraise the property at its market value and causes a taxing unit to levy a tax that is not

---

[5](...continued)
TCAD Brief]; Brief from Mike M. Tabor, Shannon, Gracey, Ratliff & Miller, L.L.P., on behalf of the Dallas Central Appraisal District, to Honorable Greg Abbott, Texas Attorney General, at 3-6 (Nov. 11, 2004); Letter from Foy Mitchell Jr., Executive Director/Chief Appraiser, Dallas Central Appraisal District, to Nancy S. Fuller, Chair, Opinion Committee, Office of Attorney General, at 2-3 (Nov. 17, 2004) [hereinafter DCAD Letter]; Brief from Robert Mott, Perdue, Brandon, Fielder, Collins & Mott, L.L.P., on behalf of the Bexar County Appraisal District and the Williamson County Appraisal District, to Honorable Greg Abbott, Texas Attorney General, at 2 (Dec. 6, 2004) [hereinafter BWCAD Brief] (all correspondence on file with Opinion Committee).

[6]We have received a brief that suggests that article VIII, section 1(a) requires appraisals by overlapping appraisal districts to be "equal and uniform." Brief from Honorable Burt R. Solomons, Chair, Committee on Financial Institutions, Texas House of Representatives, to Honorable Greg Abbott, Texas Attorney General, at 4 (Dec. 17, 2004) (on file with Opinion Committee) ("it is unequal and inconsistent to have a single property assessed differently by two different taxing agents"). However, cases construing article VIII, section 1(a) hold that it applies to property valuations and taxation of properties within the same territory, taxing unit, or district. *See Tex. Pipe Line Co. v. Anderson*, 100 S.W.2d 754, 761 (Tex. Civ. App.–Austin 1937, writ ref'd) ("It is also the settled rule that in determining the question of discrimination because of inequality of valuation or assessment of property for taxation purposes, the inquiry is necessarily limited to the particular taxing district or county in which the properties involved are situated."); *see also Spring Indep. Sch. Dist. v. Harris County Appraisal Dist.*, 889 S.W.2d 562, 565 (Tex. App.–Houston [14th Dist.] 1994), *rev'd on other grounds, Enron Corp. v. Spring Indep. Sch. Dist.*, 922 S.W.2d 931 (1996) ("Texas courts have held that taxation is 'equal and uniform' when no person or class of persons in the *same territory* is taxed at a higher rate than other persons on the same property *in the same district*.") (emphasis added); *City of Arlington v. Cannon*, 263 S.W.2d 299, 304-05 (Tex. Civ. App.–Fort Worth 1954), *aff'd in part, rev'd in part*, 271 S.W.2d 414 (1954); *Weatherly Indep. Sch. Dist. v. Hughes*, 41 S.W.2d 445, 447 (Tex. Civ. App.–Amarillo 1931, no writ). We are not aware of any case holding that article VIII, section 1(a) requires uniformity or equality between overlapping appraisal districts' appraisals of property within their overlapping jurisdictions.

equal and uniform. This will depend upon facts in the record in each case. The party challenging section 6.025(d)'s constitutionality would bear the burden of demonstrating that it fails to meet the constitutional requirements. *See Enron Corp.*, 922 S.W.2d at 934. This office, which cannot find facts, cannot make such a determination. *See* Tex. Att'y Gen. Op. No. GA-0106 (2003) at 7 ("[t]his office cannot find facts or resolve fact questions in an attorney general opinion").

In sum, this office cannot conclude that, as a matter of law, section 6.025(d) violates article VIII, section 1(a) and (b).

## B.        Article VIII, Section 18(c)

You also ask whether section 6.025(d) violates article VIII, section 18(c), which requires the legislature to "provide for a single board of equalization for each appraisal entity consisting of qualified persons residing within the territory appraised by that entity." TEX. CONST. art. VIII, § 18(c). As we have noted, section 6.41 of the Tax Code establishes an appraisal review board for each appraisal district and requires that a member of an appraisal review board must be a resident of the district, *see* TEX. TAX CODE ANN. § 6.41(a)-(b) (Vernon Supp. 2004-05), and chapter 41 of the Tax Code establishes an appraisal review board's duties with respect to the district's appraisals, *see, e.g., id.* §§ 41.03-.07 (Vernon 2001) (taxing unit challenges), 41.41-.47 (Vernon 2001 & Supp. 2004-05) (taxpayer protests).

As you state your concern,

> [s]ection 6.025(d) requires that an appraisal review board (board of equalization) for an individual overlapping appraisal district setting the lowest value establish[] values for other overlapping districts where members of the appraisal review board do not reside. Thus the constitutionally mandated residency requirement is not satisfied.

Request Letter, *supra* note 1, at 3. It is true that when the appraised or market value of a property in overlapping appraisal districts is reduced as the result of the action of one appraisal review board, section 6.025(d) requires all the chief appraisers to enter that value in their appraisal records. *See* TEX. TAX CODE ANN. § 6.025(d) (Vernon Supp. 2004-05) ("If as a result of a protest, appeal, or other action the appraised or market value of the property is subsequently reduced in any of the appraisal districts, the chief appraiser shall notify each of the appraisal districts of the reduced appraised or market value. The chief appraiser of each appraisal district shall enter that reduced appraised or market value on the appraisal records as the appraised or market value of the property."). However, the appraisal review board that has reduced the property's valuation will be the appraisal review board for an appraisal district in which the property lies. Thus, it is not the case that the property's value will be established by appraisal review board members who are not residents of an appraisal district in which the property is located.

More generally, section 6.025(d) does not alter the section 6.41 requirement that a member of an appraisal review board must be a resident of the appraisal district. Nor does it authorize an

appraisal review board to set property values for property outside the boundaries of its appraisal district. For these reasons, we conclude that section 6.025(d) does not violate the legislature's duty under article VIII, section 18(c) to provide for a single board of equalization "consisting of qualified persons residing within the territory appraised by that entity." TEX. CONST. art. VIII, § 18(c).

It has also been suggested that section 6.025(d) violates the legislature's article VIII, section 18(c) duty to "provide for a *single* board of equalization for each appraisal entity." *Id.* (emphasis added).[7] However, section 6.025(d) does not change procedures for appealing property valuations. Property owners and taxing units continue to protest or challenge an appraisal district's valuations before its appraisal review board. As the constitution requires, the legislature has provided for a system in which a single review board reviews an appraisal district's valuations. And section 6.025(d) does not interfere with article VIII, section 18(b)-(c)'s requirement that all the taxing entities participating in an appraisal district impose taxes on a property using the same, single value. It is true that under section 6.025(d) a property value to be used by taxing units in an appraisal district may have been set by another appraisal review board in the course of reviewing its appraisal district's valuation of the property. But we do not believe that this possibility violates the legislature's duty to provide for a single board of equalization for each appraisal district.

---

[7]*See* DCAD Letter, *supra* note 5, at 6; *see also* TCAD Brief, *supra* note 5, at 7; BWCAD Brief, *supra* note 5, at 4.

## S U M M A R Y

Section 6.025(d) of the Tax Code, which requires the chief appraisers of overlapping appraisal districts to enter into their districts' appraisal records the lowest appraised and market values from all the values determined by each appraisal district, does not as a matter of law violate article VIII, section 1(a) or (b) of the Texas Constitution. In a particular fact situation, a court could determine that a property value required by section 6.025(d) fails to appraise the property at its market value and causes a taxing unit to levy a tax that is not equal and uniform.

Section 6.025(d) does not violate the article VIII, section 18(c) requirement that the legislature establish a single review board for each appraisal district and that appraisal review board members reside in the appraisal district.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee