

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| EXLP LEASING LLC AND EES LEASING LLC, | § | |
| | § | |
| Appellants, | § | No. 08-13-00348-CV |
| | § | |
| v. | § | Appeal from the |
| | § | |
| LOVING COUNTY APPRAISAL DISTRICT, | § | 143rd Judicial District Court |
| | § | of Loving County, Texas |
| Appellee. | § | |
| | § | (TC#12-09-802) |
| | § | |

## **O P I N I O N**

This is an ad-valorem tax case of first impression.   The issues in this appeal, like those in three other cases on our docket, concern the taxation of natural gas pipeline compressor packages.[1]

---

[1] These cases are:   (1) EXLP Leasing LLC and EES Leasing LLC v. Ward County Appraisal District, No. 08-13-00359-CV; (2) MidCon Compression, LLC v. Reeves County Appraisal District and Loving County Appraisal District, No. 08-13-00322-CV; and (3) Valerus Compression Services, a Texas Limited Partnership, and Valerus Compression Services Management, LLC, a Texas Limited Liability Company, General Partner v. Reeves County Appraisal District and Loving County Appraisal District, No. 08-13-00366-CV.   Although this case differs both factually and procedurally from the others, it raises many of the issues present in those cases.   The resolution of these issues is important to the parties involved in all the cases on our docket because millions of dollars are at stake.   *See, e.g.,* Ender Reed & Connor McNally, *Heavy Equipment Tax Loophole Being Exploited*, TEX. ASS'N OF CNTYS. (March 26, 2015), http://county.org/Legislative/news/Pages/County%20Issues%2003-27-15/Companies-Exploit-Heavy-Equipment-Tax-Loophole.aspx (last visited September 21, 2015).   It is also important to other entities not parties to these cases but with a vested interest in their outcome.   One such entity is United Rentals, Inc., "the world's largest equipment-rental provider," who submitted an amicus curiae brief in this case and in the others supporting the "[c]ompressor [c]ompanies."

These compressor packages facilitate the production and processing of natural gas by regulating the pressure necessary to extract it and move it. In this case, the trial court ruled—as urged by Appellants—that forty-three compressor packages located in Loving County on January 1, 2012 qualified as heavy equipment. But the trial court ruled—as urged by Appellee—that taxable situs lay in Loving County and that the statutory formulas for calculating the market value of heavy equipment inventory held for lease or rent and the tax due on it were unconstitutional as applied. On appeal, Appellants contend that the trial court erred in so ruling. We affirm, in part, and reverse and render, in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellants—EXLP Leasing LLC and EES Leasing LLC[2]—are in the business of leasing compressor packages to two entities: EXLP Operating LLC and Exterran Energy Solutions, LP, respectively. These entities' business relationships are governed by two Equipment Master Rental Agreements. Pursuant to these agreements, EXLP Operating LLC and Exterran Energy Solutions, LP, lease the compressor packages to third parties. The forty-three compressor packages in dispute here were leased from Appellants' pool of approximately 1025 compressor packages assigned to their Midland County facility. In 2011, Appellants received $15,632,670.00 in rental and lease income from this pool of compressor packages.

That same year, the Legislature amended the statutes governing the taxation of heavy equipment inventory: Sections 23.1241 and 23.1242 of the Texas Tax Code. *See* Act of May 21, 2011, 82nd Leg., R.S., ch. 322, §§ 1, 2, 3, 2011 TEX.GEN.LAWS 938, 938-40. Of particular importance were changes to the statutory definitions of "dealer," "dealer's heavy equipment

---

[2] For easy reference, and unless otherwise indicated, we will refer to EXLP Leasing and EES Leasing collectively as Appellants.

inventory," "sales price," and "total annual sales." *See id*. at §§ 1, 2, 2011 TEX.GEN.LAWS 938, 938-40; TEX.TAX CODE ANN. § 23.1241(a)(1)(defining "dealer"), TEX.TAX CODE ANN. § 23.1241(a)(2)(defining "dealer's heavy equipment inventory"), TEX.TAX CODE ANN. § 23.1241(a)(7)(defining "sales price"), TEX.TAX CODE ANN. § 23.1241(a)(9)(defining "total annual sales")(West 2015). These changes, which became effective January 1, 2012, altered the formulas for calculating the market value of heavy equipment inventory and the tax due on it. *See id*. at §§ 9, 10, 2011 TEX.GEN.LAWS 938, 941; TEX.TAX CODE ANN. § 23.1241(b)(establishing formula for calculating market value of heavy equipment inventory for ad valorem purposes), TEX.TAX CODE ANN. § 23.1241(b-1)(clarifying that market value of item of heavy equipment lease or rented then sold is the sales price plus the lease and rental payments), TEX.TAX CODE ANN. § 23.1242(a)(4)(defining "unit property tax factor"), TEX.TAX CODE ANN. § 23.1242(b)(establishing formula for calculating the unit property tax of each item of heavy equipment)(West 2015).

Previously, only dealers holding items of heavy equipment inventory for sale (or for lease or rent with an option to purchase) could calculate the market value of their inventory based on sales for the previous tax year, divided by twelve. *See* Act of May 20, 1997, 75th Leg., R.S., ch. 1184, § 2, 1997 TEX.GEN.LAWS 4564, 4565-68 (amended 1999); Act of May 28, 1999, 76th Leg., R.S., ch. 1550, §§ 1, 2, 1999 TEX.GEN.LAWS 5337, 5337 (amended 2011). But beginning January 1, 2012, dealers holding items of heavy equipment inventory for lease or rent (not subject to an option to purchase) could calculate the market value of their inventory based on lease or rental payments for the previous tax year, divided by twelve. Thus, as amended, the formulas for calculating the market value of heavy equipment inventory and the tax due on it encompassed the

3

*total revenue* generated by a dealer's entire inventory—through sales and lease or rental payments—for the previous tax year, divided by twelve.   *See* TEX.TAX CODE ANN. §§ 23.1241(b), 23.1241(b-1), 23.1242(a)(4), 23.1242(b).[3]

Relying on the amendments to Sections 23.1241 and 23.1242, Appellants claimed that they were dealers of heavy equipment inventory, that their pool of 1025 compressor packages in

---

[3] These subsections read as follows:

[23.1241](b)   For the purpose of the computation of property tax, the market value of a dealer's heavy equipment inventory on January 1 is the total annual sales, less sales to dealers, fleet transactions, and subsequent sales, for the 12-month period corresponding to the preceding tax year, divided by 12.

[23.1241](b-1)   For the purpose of the computation of property tax on the market value of the dealer's heavy equipment inventory, the sales price of an item of heavy equipment that is sold during the preceding tax year after being leased or rented for a portion of that same tax year is considered to be the sum of the sales price of the item plus the total lease and rental payments received for the item in the preceding tax year.

.                    .                    .

[23.1242](a)(4)   'Unit property tax factor' means a number equal to one-twelfth of the preceding year's aggregate ad valorem tax rate at the location where a dealer's heavy equipment inventory is located on January 1 of the current year.

[23.1242](b)   Except for an item of heavy equipment sold to a dealer, an item of heavy equipment included in a fleet transaction, an item of heavy equipment that is the subject of a subsequent sale, or an item of heavy equipment that is subject to a lease or rental, an owner or a person who has agreed by contract to pay the owner's current year property taxes levied against the owner's heavy equipment inventory shall assign a unit property tax to each item of heavy equipment sold from a dealer's heavy equipment inventory.   In the case of a lease or rental, the owner shall assign a unit property tax to each item of heavy equipment leased or rented.   The unit property tax of each item of heavy equipment is determined by multiplying the sales price of the item or the monthly lease or rental payment received for the item, as applicable, by the unit property tax factor.   If the transaction is a lease or rental, the owner shall collect the unit property tax from the lessee or renter at the time the lessee or renter submits payment for the lease or rental.   The owner of the equipment shall state the amount of the unit property tax assigned as a separate line item on an invoice.   On or before the 10th day of each month the owner shall, together with the statement filed by the owner as required by this section, deposit with the collector an amount equal to the total of unit property tax assigned to all items of heavy equipment sold, leased, or rented from the dealer's heavy equipment inventory in the preceding month to which a unit property tax was assigned.   The money shall be deposited by the collector to the credit of the owner's escrow account for prepayment of property taxes as provided by this section.   An escrow account required by this section is used to pay property taxes levied against the dealer's heavy equipment inventory, and the owner shall fund the escrow account as provided by this subsection.

TEX.TAX CODE ANN. §§ 23.1241(b), 23.1241(b-1), 23.1242(a)(4), 23.1242(b).

4

Midland County qualified as heavy equipment, and that their market value was $1,302,722.00: the sum of $15,632,670.00 in lease and rental payments attributable to this pool divided by 12, rounded down. In 2012, Appellants began paying the taxes due on this amount on a monthly basis to the taxing authority in Midland County. As to the forty-three compressor packages located in Loving County, Appellants calculated their market value to be $71,247.50 but ascribed no value to them in renditions filed with Appellee—Loving County Appraisal District (hereinafter, "LCAD").

LCAD asserted that the forty-three compressor packages operating in Loving County on January 1, 2012 were taxable as business personal property. *See* TEX.TAX CODE ANN. § 23.01(a)("Except as otherwise provided by this chapter, all taxable property is appraised at its market value as of January 1."). Consequently, LCAD placed the compressor packages on its appraisal roll and appraised them at market value. For the 2012 tax year, the forty-three compressor packages were valued at $8,361,890.00. Appellants protested the determinations that the compressor packages belonged on LCAD's appraisal rolls and the valuations ascribed to them. The appraisal review board ruled against Appellants, and they sought judicial review of these rulings.

In the trial court,[4] LCAD argued that Sections 23.1241 and 23.1242 were unconstitutional on their face and as applied because they "result in an appraisal and tax not related to market value and unequal and not uniform compared to appraisal and taxation of similar property . . . ." LCAD also argued that, even if these formulas passed constitutional muster, Appellants could not take advantage of them because their compressor packages did not qualify as "heavy equipment" as that term is defined in Section 23.1241(a)(6). LCAD further argued that any tax due was payable

---

[4] Appellants' two lawsuits were consolidated into one.

to Loving County, not Midland County, because the compressor packages were located in Loving County on January 1, 2012 and had been there for more than a temporary period.

Appellants, of course, advocated the opposite and moved for summary judgment on these three issues. They succeeded in part, obtaining summary judgment declaring that the compressor packages qualify as heavy equipment:

> IT IS THEREFORE ORDERED that the Plaintiffs' Renewed Motion for Summary Judgment is granted in part, holding that the compressor packages at issue herein are self-powered, that they are intended for use for industrial purposes, that those used for gas lifts are intended for use in mining, and that Plaintiffs are heavy equipment dealers as defined by Tex. Tax Code § 23.1241(a)(1). The Plaintiffs' Renewed Motion for Summary Judgment is otherwise denied.

The other two issues—taxable situs and the constitutionality of the formulas—were litigated in a bench trial. The trial court found against Appellants on these issues, signing a take-nothing judgment in LCAD's favor:

> IT IS, THEREFORE, ORDERED that the Plaintiffs take nothing hereby and that judgment enter for the Defendant.

> IT IS FURTHER ORDERED that TEX. TAX CODE §§ 23.1241, 23.1242 are held to be unconstitutional as applied to the Plaintiffs' compressor packages at issue in this litigation. Each compressor package had situs in Loving County, as of January 1, 2012.

Appellants requested, and the trial court issued, findings of fact and conclusion of law. Thereafter, Appellants timely appealed.[5]

## MARKET VALUE

In their first issue, Appellants argue that the trial court erred in declaring that Sections 23.1241 and 23.1242 are unconstitutional as applied to the forty-three compressors packages in

---

[5] LCAD does not seek appellate review of the trial court's determination that the compressor packages qualified as heavy equipment.

dispute.[6]   We agree.

## Standard of Review

We presume a tax statute enacted by the Legislature is constitutional, and a party challenging the constitutionality of a tax statute bears the burden to demonstrate its unlawfulness. *See Enron Corp. v. Spring Indep. Sch. Dist.*, 922 S.W.2d 931, 934, 936 (Tex. 1996).   If a tax statute is reasonably susceptible to different constructions, one of which renders the statute constitutionally valid and one invalid, then we must adopt the construction upholding the validity of the enactment.   *See Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996).

## Applicable Law

Section 1 of article VIII of the Texas Constitution establishes the constitutional standard for taxation:

Sec. 1.   (a)   Taxation shall be equal and uniform.

(b)   All real property and tangible personal property in this State . . . shall be taxed in proportion to its value, *which shall be ascertained as may be provided by law*. [Emphasis added].

TEX.CONST. art. VIII, § 1(a) and (b).   In accordance with these constitutional directives, ad valorem tax rates must be uniform for all types of property and ad valorem tax values must be based on the "market value" of the property.   *Enron Corp.*, 922 S.W.2d at 935; *Nootsie*, 925 S.W.2d at 661.

But the constitution does not prescribe a particular formula or standard for determining the "market value" of property.   *Enron Corp.*, 922 S.W.2d at 936.   Instead, it directs that "value" is

---

[6]   As Appellants correctly point out in their brief, Sections 23.1241 and 23.1242 "stand or fall together."

to "be ascertained as may be provided by law." *Enron Corp.*, 922 S.W.2d at 936, *citing* TEX.CONST. art. VIII, § 1(b). "The phrase 'as may be provided by law,' when used in a constitutional provision establishing a general legal principle or administrative framework, has been held to 'clearly vest[ ] the Legislature with the authority to exert substantial control over the mechanics of [the subject matter addressed].'" *Travis Cent. Appraisal Dist. v. FM Properties Operating Co.*, 947 S.W.2d 724, 733 (Tex.App.--Austin 1997, writ denied). Because there are no specific requirements in the constitution for determining the market value of property, "the Legislature may classify property differently in arriving upon its market value[,]" "as long as the classifications are not unreasonable, arbitrary, or capricious."[7] *Enron Corp.*, 922 S.W.2d at 936. If the Legislature adheres to this maxim in "classify[ing] property differently in arriving upon its market value[,]" "there is no constitutional impediment to utilizing differing methods for *determining market value* for ad valorem tax purposes." [Emphasis in the original]. *Id*. Accordingly, "the Legislature has the constitutional authority to provide for a method of determining the *market value of inventory* that differs from the method for arriving upon the market value of other property." [Emphasis added]. *Id*.

### Discussion

LCAD has failed to demonstrate that Sections 23.1241 and 23.1242 are unconstitutional as applied to the forty-three compressor packages in dispute.[8]

---

[7] Appellants, without citing any supporting authority, assert that arbitrary-and-capricious review equates to rational-basis review. In its sur-reply brief, LCAD contends that the two standards are not equivalent. According to LCAD, arbitrary-and-capricious review is stricter than rational-basis review. But we need not decide the answer to this question because it is not germane to the resolution of this case.

[8] Appellants assert that LCAD raised a facial, as opposed to an as-applied, challenge to Sections 23.1241 and 23.1242 by contending that lease revenue divided by 12 can never equal market value. "A facial challenge claims that a statute, by its terms, always operates unconstitutionally." *Tenet Hospitals Ltd. v. Rivera*, 445 S.W.3d 698, 702 (Tex. 2014). "By contrast, an as-applied challenge asserts that a statute, while generally constitutional, operates

## 1. In Proportion to its Value

LCAD argues that Sections 23.1241 and 23.1242 violate the constitutional requirement that property be taxed in proportion to its market value because, for ad valorem purposes, "market value" means "reasonable market value" as calculated under the "willing buyer-willing seller" test. Under this test, market value corresponds to:

> [T]he price which the property would bring when it is offered for sale by one who desires, but is not obliged to sell, and is bought by one who is under no necessity of buying it, taking into consideration all of the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future.

*City of Austin v. Cannizzo*, 153 Tex. 324, 334, 267 S.W.2d 808, 815 (1954); *see* TEX. TAX CODE ANN. § 1.04(7)(A)-(C)(West 2013)(defining "market value" in a similar vein). The Legislature, according to LCAD, acted unreasonably, arbitrarily, and capriciously by ignoring the willing buyer-willing seller test when amending Sections 23.1241 and 23.1242 because, under these statutes, the compressor packages are valued at "a fraction of annual rental income[,] which could never reflect the[ir] reasonable market value . . . ." LCAD's argument is unavailing.

To succeed in arguing that Sections 23.1241 and 23.1242 violate the constitutional requirement that property be taxed in proportion to its market value, LCAD must demonstrate that

---

unconstitutionally as to the claimant because of her particular circumstances." *Tenet Hospitals Ltd.*, 445 S.W.3d at 702. LCAD counters that it raised both types of challenges:

> [LCAD] has shown that § 23.1241, as it is written, always operates unconstitutionally with regard to leased property, violating the 'equal and uniform' and/or 'value' provisions of the Texas Constitution. In addition, and in the alternative, [LCAD] has proven the narrower challenge, that the statute, as applied to Exterran's Compressor Packages, violates such provisions.

Notwithstanding its assertion to the contrary, LCAD has not raised an as-applied challenge to Sections 23.1241 and 23.1242. As is evident, LCAD fails to explain under what circumstances an item of heavy equipment inventory can equal market value. But LCAD's failure to raise an as-applied challenge to Sections 23.1241 and 23.1242 is ultimately irrelevant. This is because for a statute to be facially, and, therefore, always, unconstitutional, it must also be unconstitutional as applied to the subject matter in issue. *See Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 n.16 (Tex. 1995). Thus, to prevail in arguing that Sections 23.1241 and 23.1242 are unconstitutional, LCAD is required to prove, at a minimum, that these statutes are unconstitutional as applied.

9

the only constitutionally-acceptable method for determining the market value of heavy equipment inventory held for lease or rent as a whole is to ascertain the prices at which each item of inventory would sell for in an arms-length transaction and aggregate them. *See FM Properties*, 947 S.W.2d at 733. Stated another way, the appraisal districts must prove that it is unreasonable, arbitrary, or capricious for the Legislature to value heavy equipment inventory held for lease or rent based on the income generated by the items actually leased or rented. *See id*. LCAD has failed to so prove. Put simply, it is not unreasonable, arbitrary, or capricious to determine the market value of heavy equipment inventory held for lease or rent based on the income generated by the items actually leased or rented. In fact, valuing heavy equipment inventory in this manner makes sense because inventory, by definition, is different than other types of property.

Inventory is an idle stock of physical goods a business holds on hand in the regular course of business awaiting consumption at a future point in time. *See FM Properties.*, 947 S.W.2d at 728, 730. Although each item of inventory has some economic value in an abstract sense, an owner does not capture the maximum economic value of each item while it sits idly generating no revenue. The maximum economic value of an item of inventory is unlocked when it generates revenue. Correspondingly, because inventory is not intended to be held for any period of time, capturing its value is difficult given that inventory levels tend to fluctuate significantly throughout the year. *Enron Corp.*, 922 S.W.2d at 939-40; *Expo Motorcars, L.L.C. v. Harris County Appraisal Dist.*, No. 01-08-00473-CV, 2009 WL 2232017, *4 (Tex.App.--Houston [1st Dist.] July 23, 2009, pet. denied)(mem. op.). Thus, given that the maximum economic value of inventory is tied to the revenues it generates and that value is a point-in-time estimate, it is neither unreasonable nor arbitrary nor capricious for the Legislature to require use of a 12-month trailing,

10

revenue-based method for valuing heavy equipment inventory held for lease or rent.

This method for valuing inventory of large, expensive goods is neither novel nor unique. The Legislature, "understand[ing] and correctly appreciate[ing] the needs of" businesses dealing with this type of inventory has responded by passing laws "directed to problems made manifest by experience[,]" *i.e.*, the special provisions permitting inventory involving motor vehicles, watercraft and outboard motors, manufactured housing, and—of course—heavy equipment, to be valued using a 12-month trailing revenue-based method. *See Enron Corp.*, 922 S.W.2d at 934 [Internal quotation marks and citations omitted]; TEX.TAX CODE ANN. § 23.121 (motor vehicles), TEX.TAX CODE ANN. § 23.124 (watercraft and outboard motors), TEX.TAX CODE ANN. § 23.1241 (heavy equipment), TEX.TAX CODE ANN. § 23.127 (manufactured housing). For inventory consisting of motor vehicles, watercraft and outboard motors, and manufactured housing, revenues are based on sales. *See* TEX.TAX CODE ANN. §§ 23.121, 23.124, 23.127. This sales-based method for ascertaining the market value of inventory has been upheld as constitutionally permissible because it is reasonable—not arbitrary or capricious—to require dealers to pay taxes only on inventory actually sold. *See Expo Motorcars*, 2009 WL 2232017, at *4-*5 (upholding the constitutionality of Section 23.121's method for calculating the market value of motor vehicle inventory as of January 1 of a tax year based on actual sales from the previous calendar year because a sales-based method, as opposed to single-date valuation method, achieves a more accurate reflection of the market value of motor vehicle inventory, since inventory levels fluctuate widely over the course of a year).

For heavy equipment inventory, revenues are based on sales and lease or rental payments. *See* TEX.TAX CODE ANN. § 23.1241. LCAD does not contend that the sales-based portion of the

11

formula for calculating the market value of heavy equipment inventory is unconstitutional, likely because such a contention would be futile. *See Expo Motorcars*, 2009 WL 2232017, at *4-*5.[9] Instead, it contends that the lease- (and rental-) based portion of the formula is unconstitutional as applied to the forty-three compressor packages in dispute because "the scheme results in a valuation of 0% to 2.94% of the undisputed fair market value as defined by the 'willing buyer-willing seller test.'" But just as it is eminently reasonable to require dealers of inventory held for sale in the ordinary course of business to pay taxes only on inventory actually sold, it is eminently reasonable to require dealers of inventory held for lease or rent in the ordinary course of business to pay taxes only on inventory actually leased or rented. The nature of the beast dictates this outcome.

An operating lease or rental transaction involving an item of heavy equipment is the purchase of a service produced by the lessor, not the purchase of a sale of a good. The lessee or renter is purchasing the right to use an item of heavy equipment for a specific period of time, and the item's value is derived from its use at that given moment in time. To the owner of an item of inventory producing lease or rental income, the value of such an item is the present worth of the future payments expected over the item's remaining service life. *See FM Properties*, 947 S.W.2d at 734. Given this economic reality, it is reasonable to calculate the market value of such an item, the efficiency and service life of which is declining during the lease or rental period, based on the current income generated by the item. By directing that the value of heavy equipment inventory held for lease and rent is equivalent to the income generated by the lease and rental payments,

---

[9] LCAD contends that *Expo Motorcars* is not dispositive because "there was no evidence in that case that the resulting taxation scheme did not result in a reasonable estimate of *market value*." [Emphasis in orig.]. LCAD also attempts to distinguish *Expo Motorcars* on the basis that "the vehicle inventory tax . . . [there] does not bear the constitutional infirmities that leased heavy equipment, and particularly Exterran's Compressor Packages, suffers from heavy equipment dealer inventory tax."

12

Section 23.1241 and 23.1242 "essentially require[] nothing more than that the inventory of a business should, for taxation purposes, be considered as income-producing property and its market value determined pursuant to the income approach." *See FM Properties*, 947 S.W.2d at 734. Arguably, employing a 12-month trailing, revenue-based method for valuing heavy equipment inventory held for lease is inherently fairer and more likely to reflect the market value of that inventory than other approaches. Indeed, LCAD's proposed method for determining the market value of Appellants' inventory—the sum of the prices each item of inventory would command if sold in arms-length transactions regardless of income generated by the inventory as a whole—is arguably unreasonable. Why insist on taxing an item of heavy equipment *inventory held for the sole purpose of generating income* based on a formula better suited for determining the market value of *individual goods held for sale*?

The answer, according to LCAD, is because Sections 23.1241 and 23.1242 create a loophole permitting dealers of heavy equipment inventory held for lease or rent to escape taxation by mandating that the value of inventory as a whole does not include items not leased or rented, even though these items have substantial value if sold or owned outright. But that result is not determinative of whether Sections 23.1241 and 23.1242 are arbitrary, unreasonable, or capricious classifications by the Legislature. This is because the Legislature has the authority to implement tax policy inuring to the benefit of the taxpayer rather than to the state. *See Enron Corp.*, 922 S.W.2d at 939. As explained above, it is not unreasonable, arbitrary, or capricious to calculate the taxable value of heavy equipment inventory held for lease or rent based on the revenues generated by the portions of inventory actually leased or rented.

LCAD, citing *FM Properties,* maintains that "[m]arket value, as determinable through

13

application of the 'willing buyer-seller test' cannot be ignored." *See FM Properties*, 947 S.W.2d at 732, *citing City of Saginaw v. Garvey Elevators, Inc.*, 431 S.W.2d 575, 579 (Tex.Civ.App.--Fort Worth 1968, writ ref'd n.r.e.). But *FM Properties* does not hold, and does not stand for the proposition, that the market value of inventory held for the sole purpose of generating income is determined by the sum of the prices each item of inventory would command if sold in arms-length transactions. In fact, the court in *FM Properties* renounced this approach in valuing real estate inventory held for sale in the ordinary course of a trade or business. The court concluded that valuing inventory as a unit based on "what a purchaser would pay for property at the present time in a single transaction," rather than on "what might be paid by dozens or even hundreds of purchasers if the property were sold in pieces over an extended period of time[,]" "is inherently fairer and more likely to produce true market value than other approaches such as multiplying the total number of inventory items on hand by the retail price of each individual item." *FM Properties*, 947 S.W.2d at 729, 731. It was in this context in which the court opined that the "number of lots times retail price of each lot" formula did not capture the inventory's "[m]arket value, as determinable through application of the 'willing buyer-seller test'" because this valuation method produced "[a]n amount that no willing buyer would pay for . . . [the] entire inventory of lots at a given point in time." *See id*. at 732.

*FM Properties* actually supports the proposition that it is constitutionally permissible to determine the market value of heavy equipment inventory held for lease or rent based on the revenues generated by the portions of inventory actually leased or rented. *FM Properties*, 947 S.W.2d at 731-34 (upholding the constitutionality of statutory method for calculating the market value of real estate inventory based on what a purchaser would pay for all of the inventory in a

14

single transaction because this valuation method achieves a more accurate reflection of the market value of real estate inventory held for as a unit for the purpose of generating income, since method, among other reasons, more painstakingly accounts for the net income that a potential purchaser might anticipate deriving from the purchase of the property, after the deduction of development and marketing costs and with due regard for the time value of money, rather than merely recognizing a gross income figure that might be anticipated from the sale of each particular parcel over a designated period of time without accounting for the inherent costs). Viewing *FM Properties* in this light is consistent with the constitutional requirement that value is "ascertained as may be provided by law" and is in accord with the Supreme Court's pronouncement in *Enron Corp.* that inventory may be valued differently than other types of property, as long as the standard for ascertaining its value is neither unreasonable, arbitrary, or capricious.

Based on the foregoing discussion, we conclude that LCAD has failed to demonstrate that Sections 23.1241 and 23.1242, as applied in this case, run afoul of the constitutional requirement that all property be taxed in proportion to its value. Accordingly, the trial court erred in concluding otherwise.

## 2. Equal and Uniform

LCAD also asserts that Sections 23.1241 and 23.1242 violate the constitutional requirement that taxation be equal and uniform because these statutes favor leased compressors over owned compressors even when the compressors are alike in all relevant respects. LCAD's assertion is without merit.[10]

---

[10] Somewhat bizarrely, LCAD asserts that Appellants waived their complaint that the trial court erred in concluding that Sections 23.1241 and 23.1242 violate the constitutional requirement that taxation be equal and uniform because they failed "to provide a substantive analysis of the 'equal and uniform' holding of the trial court or cite any legal authorities in support therof." But Appellants' did not waive such a complaint. Appellants not only identify as their

15

The constitutional mandate of equality and uniformity requires only that all persons falling within the same class be taxed alike. *Hurt v. Cooper*, 130 Tex. 433, 440-41, 110 S.W.2d 896, 901 (1937). In other words, a tax system must operate equally within each class. The relevant class here is dealers of heavy equipment inventory. Sections 23.1241 and 23.1242 apply even-handedly to this class because the amount of tax due on this type of inventory is always based upon the previous year's revenue, divided by 12. Because there is no evidence that this valuation method is not applied equally and uniformly to dealers of heavy equipment inventory, there is no disparate treatment within the class. That Sections 23.1241 and 23.1242 may produce disparate appraisal values among differently-situated taxpayers does not prove that are unequal and non-uniform.

We conclude that LCAD has failed to prove that Sections 23.1241 and 23.1242, as applied in this case, violate the constitutional requirement that taxation be equal and uniform. Accordingly, the trial court erred in concluding otherwise.

Appellants' first issue is sustained.

## TAXABLE SITUS

In their second issue, Appellants contend that the trial court erred in declaring that taxable situs of the forty-three compressor packages in dispute lay in Loving County. We disagree.

### *Applicable Law*

Although not identified as such in the trial court's judgment, Section 21.02(a) of the Tax

---

first issue the trial court's error "in finding that Section 23.1241 contravenes Article VIII, Section 1[,]" they also claim that in enacting these two statutes, the Legislature had a rational basis for treating heavy equipment inventory held for lease differently than other types of property. It is beyond dispute that subsumed within these arguments is the subsidiary argument that Sections 23.1241 and 23.1242 do not violate the constitutional requirement that taxation be equal and uniform. *See, e.g.*, TEX.R.APP.P. 38.1(f)(providing that the "statement of an issue . . . will be treated as covering every subsidiary question that is fairly included"); TEX.R.APP.P. 38.9 (directing that briefing rules be construed liberally). We further note that LCAD bears the burden to demonstrate that Sections 23.1241 and 23.1242 are unconstitutional.

16

Code is the statutory basis for the trial court's conclusion that taxable situs lay in Loving County. This statute, which codifies the so-called "mobilia" rule and its exceptions,[11] provides that:

> (a) [Except for certain inapplicable exceptions,] tangible personal property is taxable by a taxing unit if:
>
> (1) it is located in the unit on January 1 for more than a temporary period;
>
> (2) it normally is located in the unit, even though it is outside the unit on January 1, if it is outside the unit only temporarily;
>
> (3) it normally is returned to the unit between uses elsewhere and is not located in any one place for more than a temporary period; or
>
> (4) the owner resides (for property not used for business purposes) or maintains the owner's principal place of business in this state (for property used for business purposes) in the unit and the property is taxable in this state but does not have a taxable situs pursuant to Subdivisions (1) through (3) of this subsection.

TEX.TAX CODE ANN. § 21.02(a)(1)-(4)(West 2015); *see* TEX.CONST. art. VIII, § 11 (requiring that property be assessed for taxation and that taxes be paid in the county where it is situated).

As a general rule, courts presume that "the personalty in question has a tax situs within the taxing unit's jurisdiction." *Davis*, 632 S.W.2d at 335. To rebut this presumption, the taxpayer must present evidence that the property has not acquired situs in the jurisdiction and the taxpayer is not domiciled there, or that the property has acquired situs outside the tax authority's boundaries, or that a statute directs the property be taxed elsewhere. *Id.* Otherwise, the presumption becomes conclusive. *Id.*

### Discussion

Appellants have failed to rebut the presumption that, on January 1, 2012, taxable situs of the forty-three compressor packages in dispute lay in Loving County.

---

[11] *See Davis v. City of Austin*, 632 S.W.2d 331 (Tex. 1982).

Appellants do not contend that Loving County cannot tax the compressor packages because they neither conduct business nor maintain facilities in Loving County. Nor do Appellants contend that the compressor packages were not located in Loving County for a sufficient amount of time to comply with the requirements of Section 21.02(a). To the contrary, Appellants assert that fixing situs in accordance with Section 21.02(a) would undermine Section 23.1241's purpose, *i.e.,* to value heavy equipment inventory as a whole and eliminate administrative, financial, and logistical impediments for both dealers of heavy equipment and taxing authorities. These potential pitfalls, according to Appellants, do not arise when situs is fixed at a dealer's "business address" or "business location" as mandated by Section 23.1241(f) and the conforming administrative form and manual promulgated by the comptroller. Proceeding under this theory, Appellants maintain that taxable situs of the forty-three compressor packages in dispute lies in Midland County because this is where they "maintain[] a yard from which its inventory in the Permian Basin region is leased, to which leased compressors are returned after leases expire, and where the inventory in the area is serviced." Appellants are mistaken.

Nothing in Section 23.1241(f) refers to taxable situs. The statutory language does not unambiguously direct that heavy equipment inventory be taxed at the business address of each location at which the dealer conducts business. Indeed, the statute does not even mandate that the dealer file the form with the appraisal district in which the inventory's business location is situated. So far as "business location" is concerned, Section 23.1241(f) fails to define this term and to distinguish between a dealer's principal place of business and other business locations. Nor, as the Tyler Court of Appeals noted in analyzing this statute, does it "provide instruction for a business to determine where, among different counties, it must pay taxes." *Valerus Compression*

18

*Servs. v. Gregg Cnty. Appraisal Dist.*, 457 S.W.3d 520, 526 (Tex.App.--Tyler 2015, no. pet.).

Section 23.1241(f) merely directs a dealer of heavy equipment to file an inventory declaration

form and identifies the information that the dealer must report to the taxing authorities:

> The comptroller by rule shall adopt a dealer's heavy equipment inventory declaration form. Except as provided by Section 23.1242(k), not later than February 1 of each year, or, in the case of a dealer who was not in business on January 1, not later than 30 days after commencement of business, each dealer shall file a declaration with the chief appraiser and file a copy with the collector. The declaration is sufficient to comply with this subsection if it sets forth:
>
> (1) the name and business address of each location at which the declarant conducts business;
>
> (2) a statement that the declarant is the owner of a dealer's heavy equipment inventory; and
>
> (3) the market value of the declarant's heavy equipment inventory for the current tax year as computed under Subsection (b).

TEX.TAX CODE ANN. § 23.1241(f).

Likewise, nothing in the form and the manual promulgated by the state comptroller refers

to taxable situs. *See* Dealer's Heavy Equipment Inventory Tax Statement,

http://www.comptroller.texas.gov/taxinfo/taxforms/50-266.pdf; Heavy Equipment Dealer's

Special Inventory, http://window.texas.gov/taxinfo/proptax/pdf/96-560.pdf. Form 50-266 (the

form) is a tax statement a dealer of heavy equipment must file in conjunction with the tax due

under Section 23.1242. *See* Dealer's Heavy Equipment Inventory Tax Statement, "General

Instructions." The accompanying instructions (the manual) identify the six steps a dealer must

undertake "to calculate, report, and pay inventory property taxes." *See* Heavy Equipment

Dealer's Special Inventory, p. 9. Significantly, neither the form nor the manual contains any

information whatsoever helpful in determining taxable situs under Section 23.1241(f). *See*

Dealer's Heavy Equipment Inventory Tax Statement; Heavy Equipment Dealer's Special Inventory. For example, neither document directs that heavy equipment inventory be taxed at the business address of each location at which the dealer conducts business. *See* Dealer's Heavy Equipment Inventory Tax Statement; Heavy Equipment Dealer's Special Inventory. And although both documents direct a dealer to file with the county tax office a tax statement for each business location along with prepayment of taxes, neither one identifies where those taxes are to be paid. *See* Dealer's Heavy Equipment Inventory Tax Statement, "General Instructions" & "Where to File;" Heavy Equipment Dealer's Special Inventory, pgs. 10-13. Due to these shortcomings in both documents, they cannot be considered the comptroller's construction of Section 23.1241(f). *See Valerus*, 457 S.W.3d at 525 (concluding that similar shortcoming in a related form, Form 50-265, Dealer's Heavy Equipment Inventory Declaration, rendered the form nothing more than a form and precluded its consideration as the comptroller's construction of Section 23.1241(f)).

Appellants have failed to demonstrate that the Legislature intended to fix taxable situs of heavy equipment inventory at a dealer's "business address" or "business location." Accordingly, the trial court did not err in concluding that taxable situs of the forty-three compressor packages in dispute lay in Loving County. *See EXLP Leasing, LLC v. Galveston Cent. Appraisal Dist.*, No. 14-14-00268-CV, 2015 WL 5025534, at *6-*7 (Tex.App.--Houston [14th Dist.] Aug. 25, 2015, no pet. h.)(holding that Section 23.1241(f) does not address the taxable situs of heavy equipment inventory); *Valerus,* 457 S.W.3d at 523-27 (same).[12]

---

[12] Appellee, in a letter brief to the Court posits that *EXLP v. Galveston* stands for the proposition the application of Section 23.1241 does not "result in a reasonable market value[.]" However, the *EXLP* court did not reach the question of the constitutionality of Section 23.1241 and Section 23.1242, but rather concludes that neither party carried "their respective summary judgment burden[.]" *EXLP*, 2015 WL 5025534, at *1. The case was remanded to the trial court for "further proceedings on the constitutionality of sections 23.1241 and 23.1242 as applied to the compression unit rental inventories at issue" because the trial court had "insufficient information to determine as a matter of law" that the statute's method of calculation "was not 'based on the[ir] reasonable market value.'" *EXLP*,

Appellants' second issue is overruled.

## CONCLUSION

The portion of the trial court's judgment declaring Sections 23.1241 and 23.1242 to be unconstitutional as applied to Appellants' compressor packages is reversed, and judgment is rendered that these two statutes are not unconstitutional as applied. In all other respects, the trial court's judgment is affirmed.

September 23, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, J., and Larsen, Senior Judge
Larsen, Senior Judge (Sitting by Assignment)

---

2015 WL 5025534, at \*5-\*6, *citing Enron*, 922 S.W.2d at 935.

21